[Crim. No. 1243. First Appellate District, Division One.—March 20, 1925.]

## Ex parte RAINE EWELL on Habeas Corpus.

[1] CONTEMPT—HABEAS CORPUS—IMPEACHMENT OF JUDGMENT.—In a proceeding in *habeas corpus* to secure the release of petitioner from custody on a commitment for contempt of court, the petitioner may not go behind the judgment and offer evidence to impeach the facts and matter adjudicated therein, but those facts must be taken as true.

[2] ID.—ATTORNEY AT LAW—LETTER TO TRIAL JUDGE—ATTEMPT TO CHANGE JUDGE'S OPINION—UNLAWFUL INTERFERENCE WITH PROCEEDINGS.—Where, after the trial judge has filed a written opinion and order for judgment in an action but before findings are prepared and signed, an attorney in the case dictates and abets in sending to the judge a letter for the purpose of creating a feeling of resentment toward and prejudice his mind against those whom the judge had indicated in his opinion should be successful in said litigation, and thus, by such improper means, attempts to persuade the judge, if possible, to change his views upon the law and the facts as expressed by him in said opinion and to decide the case favorably to the interests of said attorney and his client, such acts are clearly an unlawful interference with the proceedings of the court and an attempt to obstruct the course of justice, and, therefore, a contempt of court; and the fact that said attorney does not personally sign the letter is immaterial.

---

1. Habeas corpus to obtain relief from imprisonment for contempt, note, 87 Am. St. Rep. 179. See, also, 5 Cal. Jur. 958.

2. Contempt of court in written communication to judge, note, 26 Am. Rep. 752. See, also, 5 Cal. Jur. 900.

[3] ID.—SUBSEQUENT EXPLOITATION OF CHARGES—CONTEMPT IN PRESENCE OF COURT. —Where, in a subsequent hearing before the succeeding judge of a motion for the substitution of said attorney as counsel for the person who signed said letter, and who had theretofore been represented by other counsel, said attorney, without legal justification, asked that said letter (which was in the possession of the succeeding judge) be produced and offered in evidence, with the obvious purpose of exploiting and emphasizing in public the charges of collusion and unlawful practices therein contained, and when, in the same discussion, or a part thereof, he declared that said letter was also an attack upon the judge who tried and decided the case, such conduct was an aggravation of the contempt already committed by instigating the sending of said letter, and rendered him liable to punishment for contempt committed in the presence of the court.

(1) 29 C. J., p. 52, n. 27, p. 96, n. 13.   (2) 13 C. J., p. 30, n. 36.
(3) 13 C. J., p. 29, n. 23.

PROCEEDING in Habeas Corpus to secure the release of petitioner from custody on a commitment for contempt of court. Writ discharged and petitioner remanded to custody.

The facts are stated in the opinion of the court.

Raine Ewell, in. pro. per., for Petitioner.

R. M. J. Armstrong, John J. Goldberg and E. F. Treadwell for Respondents.

KNIGHT, J.—Application for a writ of *habeas corpus*.
Petitioner was adjudged guilty of contempt of court and sentenced to imprisonment in the county jail for a period of twenty-four hours, by the superior court of the state of California in and for the city and county of San Francisco, department 16 thereof, Honorable Louis H. Ward presiding. The return of the sheriff to said writ sets forth a copy of the commitment embodying the judgment of contempt. Incorporated in such judgment are the facts upon which the adjudication of contempt is based. [1] The return, we

3. Personal criticism of or insult to court because of decision after determination of cause, as grounds for contempt or disbarment, note, 17 L. R. A. (N. S.) 585.

think, is legally sufficient in form and substance and we do not agree with petitioner that in a *habeas corpus* proceeding a petitioner may go behind the judgment and offer evidence to impeach the facts and matter adjudicated therein; those facts must be taken as true. (*In re Shortridge*, 5 Cal. App. 371 [90 Pac. 458]; *Ex parte Ah Men*, 77 Cal. 198 [11 Am. St. Rep. 263, 19 Pac. 380].)

Petitioner also filed and presented a petition for a writ of *certiorari* whereby he seeks to have said judgment of contempt reviewed and annulled. The circumstances leading up to the contempt proceedings are fully set forth in the latter petition and in the copies of the documents and pleadings thereto attached and made a part thereof. Those circumstances may be briefly stated as follows: During the latter part of the year 1923 an action in interpleader came on for trial in department 16 of said court before the Honorable Claude F. Purkitt, Judge of the superior court of Glenn County, presiding. One of the cross-defendants in said action was Kenneth M. Mays, who, according to the record before us, was an unfortunate drug addict, and either at the time of the trial of said action was, or soon thereafter became, a prisoner in the state penitentiary. The petitioner, who is a licensed member of the bar, was also a cross-defendant, having acquired an interest in the subject matter of said litigation by assignment from said Mays. Petitioner also appeared in said action as the attorney for Mays. Owing to the apparent conflict between the interests of these two cross-defendants, Judge Purkitt made an order appointing Attorney J. A. Brown to protect the rights of Mays. Brown thereupon caused an amended answer to be filed on behalf of Mays, alleging that the assignment from Mays to petitioner was fraudulent. On or about December 19, 1924, Mays was released from prison. On December 31, 1924, Judge Purkitt filed a written opinion and order for judgment in said action, in which it was held, among other things, that petitioner, as assignee of Mays, was entitled to receive a sum of money less than the amount called for by the terms of said assignment. After said opinion had been filed and before findings were prepared or signed, to wit, on January 4, 1925, Mays mailed a seven-page typed letter signed by him, but dictated by petitioner, to Judge Purkitt, insinuatingly criticising the manner in which the case had been decided, vigorously as-

sailing the integrity and faithfulness of Attorney Brown, impugning the honesty of the successful cross-defendants, praising the value of the services and sincerity of purpose of petitioner, and insisting that petitioner's assignment be recognized and enforced to the full extent of the terms thereof. In said letter it was further stated that Mays had filed notice of motion to substitute the petitioner as his attorney, and request was made that no further steps be taken in the action until after the hearing of said motion. Said motion came on for hearing before Judge Ward, then presiding in department 16 of said court, on January 16, 1925. Mays was sworn as a witness in his own behalf. During the examination of said witness petitioner called for the letter of January 4, 1925, which Judge Purkitt had forwarded to the clerk of the court, and which was then in the possession of Judge Ward, and, upon its production, offered the same in evidence. Mays testified that said letter had been dictated by petitioner and that the statements contained therein were not his but were petitioner's. The court then interrogated petitioner as follows: "The Court (addressing Mr. Ewell): You dictated this letter to this gentleman? Mr. Ewell: So far as the language was used, I put it in proper English for him. The Court: Yes. Mr. Ewell: And corrected the spelling for him, but as to the wording of that letter, that letter was at the will of Mr. Kenneth Mays. Now I want to show by the examination— The Court: Well, let me say this to you, Mr. Ewell. Mr. Ewell: Yes, sir. The Court: You made statements here this morning accusing very reputable gentlemen of crookedness, didn't you? Mr. Ewell: I did not accuse them of crookedness; I accused them of perjury in this answer, yes, sir." A moment later the court said: "Now this letter is in a sense an attack upon Judge Purkitt. Mr. Ewell: I think it is, yes, sir." The court thereupon adjudged petitioner guilty of contempt of court upon the ground that said letter was an attack upon the honor and integrity of the court; that petitioner's part in dictating said letter, having it written by said witness, presenting it to Judge Purkitt through the mail, and afterwards injecting it into proceedings on the hearing of said motion, coupled with the language used by petitioner during the hearing of said motion, was contemptuous; and petitioner was thereupon sentenced accordingly.

[2]    Aside from the question of whether the innuendoes arising from the language employed in said letter were defamatory of the court and the judge thereof, we believe that the contents of said letter show without doubt that the manifest purpose of preparing the same and sending it at that particular time to the judge who tried the case, was to create a feeling of resentment toward and prejudice his mind against those whom he had indicated in his opinion should be successful in said litigation, and thus, by such improper means, attempt to persuade the judge, if possible, to change his views upon the law and the facts as expressed by him in said opinion and to decide the case favorably to the interests of Mays and petitioner. The sending of such a letter under those circumstances to a judge who still had before him the duty of exercising judicial functions in the case, was, we think, clearly an unlawful interference with the proceedings of the court and an attempt to obstruct the course of justice, and therefore a contempt of court. The fact that petitioner dictated said letter and abetted in the sending the same to the judge rendered him as culpable as if he had personally signed the letter.

The situation presented is not one wherein an attorney representing a party to the action, in good faith, calls attention of the judge, by letter, after mailing a copy to opposing counsel, to some inadvertent statement of law or fact set forth in the judge's written opinion. The letter here was made up principally of charges involving the moral turpitude of the other parties to the action in reference to which neither the writer of the letter nor anyone else would have been allowed to testify in court. Moreover, the writing of the letter cannot be said to have been intended as an application for a new trial, because petitioner, as an attorney, was familiar with the code provisions to the effect that such application could be legally made only upon notice, after findings and judgment have been entered; neither can said letter be construed as a request for substitution of attorneys, because the law makes adequate provision for such substitution by motion, upon notice, at the hearing of which motion proof, either oral or documentary, may be introduced in support thereof.

[3]    When the petitioner afterward, at the time of the hearing of said motion, without legal justification, asked

that said letter be produced and offered it in evidence, with the obvious purpose of exploiting and emphasizing in public the charges of collusion and unlawful practices therein contained, and when, in the same discussion, as a part thereof, he declared that said letter was also an attack upon the judge who tried and decided the case, we think that petitioner was remiss in his duty as an attorney and an officer of the court "to maintain the respect due courts of justice and judicial officers" (Code Civ. Proc., sec. 282), and that his conduct in the respects mentioned was an aggravation of the contempt he had already committed by instigating the sending of said letter, and rendered him liable to punishment for contempt committed in the presence of the court.

The judgment of contempt is therefore sustained; the writ is discharged and the petitioner remanded to the custody of the sheriff holding the commitment; and it is, ordered that upon the reapprehension of petitioner under said commitment, or his voluntary surrender in obedience thereto, the bail heretofore given by petitioner be exonerated.

Tyler, P. J., and Cashin, J., concurred.