[Crim. No. 1648. First Appellate District, Division Two.—May 23, 1932.]

In the Matter of the Application of EDWARD A. CUNHA for a Writ of Habeas Corpus.

Edward A. Cunha, *in pro. per.*, Dean Cunha and Harry I. Stafford for Petitioner.

Earl Warren, District Attorney, J. Frank Coakley, Assistant District Attorney, and George C. Perkins, Deputy District Attorney, for Respondent.

NOURSE, P. J.—Petitioner seeks his release from a committment issued upon an order adjudging him in contempt and sentencing him to the maximum penalty of five days in jail and a $500 fine.

The proceedings rest upon the following state of facts: The petitioner was chief counsel for the defendant in an action entitled *People* v. *Kelly* pending in the Superior Court of Alameda County wherein the defendant was charged with manslaughter growing out of an automobile accident in which two persons were killed. The cause went to trial before Judge Fred V. Wood and a jury on October 26, 1931. The cause was given to the jury on November 5, 1931, and on the following day the trial judge called the jury into court and ordered their discharge, stating that he had been informed of misconduct on the part of certain members of the jury. The cause was then continued to a later date for a new trial, but in the meantime Judge Wood declared himself disqualified because of prejudice against the defendant and suggested the appointment of another judge by the Judicial Council. In due time the Judicial Council assigned the respondent, Judge Stanley Murray, to act and preside in the trial of that case. On December 7, 1931, the day on which the case of *People* v. *Kelly* was set for trial, the defendant Kelly personally presented in open court a document entitled "Statement of Defendant Objecting to Hearing, etc.", which was, in short, an affidavit executed by defendant Kelly alleging that Judge Murray was disqualified from proceeding further with the trial of his case by reason of bias and prejudice upon grounds specified in the affidavit. Counter-affidavits were filed by Judge Murray and by the district attorney's office and the question of disqualification was duly assigned to Judge Murphey, one of the judges of the Superior Court of Alameda County, who, after a hearing held on December 11, 1931, ruled that Judge Murray

was not disqualified. On January 15, 1932, the case of *People* v. *Kelly* came on duly for hearing and resulted in a verdict finding the defendant guilty of manslaughter. On January 29, 1932, while the defendant Kelly was before Judge Murray for sentence, he was asked who prepared the affidavit alleging the disqualification of Judge Murray and was informed by the defendant Kelly that such affidavit had been prepared by the petitioner herein. After sentence had been imposed upon Kelly, Judge Murray then issued a citation for contempt against this petitioner, ordering the petitioner to appear before him on February 4, 1932, to show cause why he should not be adjudged guilty of contempt in the preparation of such affidavit. On the day set a hearing was had before Judge Murray, at the close of which the petitioner was adjudged guilty of contempt and sentenced in the manner above stated.

The affidavit which is the basis of the contempt charge covers twenty-six typewritten pages. It contains a full recital of the proceedings before Judge Wood in the discharge of the jury in the first trial of the case of *People* v. *Kelly,* and this is followed by a lengthy statement of facts upon which the affiant based his conclusion that Judge Wood was biased and prejudiced against the defendant Kelly and the petitioner herein. In this connection it is alleged that Judge Wood, having declared himself disqualified to act further in the cause of *People* v. *Kelly,* became actively engaged with the district attorney's office in the selection of Judge Murray to try said cause; that having declared himself disqualified he urged the Judicial Council to assign Judge Murray for that purpose without permitting the parties to agree upon another judge; that he and the district attorney's office were in consultation with Judge Murray for the purpose of procuring him to sit in the trial of said cause; that Judge Wood engaged in a tirade against the defendant Kelly "for the purpose of intimidating and influencing jurors" who might be called later to try the Kelly case; and that in many other ways Judge Wood was active in carrying his bias and prejudice against the defendant over into the further prosecution in the proceedings of the case of *People* v. *Kelly.* The conclusion is then drawn in the affidavit that, by reason of the provisions of section 170 of the Code of Civil Procedure, which authorize the assignment by the Judicial

Council of another judge when the parties have failed to agree upon another judge, the assignment of Judge Murray was illegal and irregular and that the activities of Judge Wood and of the district attorney's office in procuring said assignment were the result of the admitted bias and prejudice of Judge Wood against the affiant. It is then alleged on information and belief that, before the assignment of Judge Murray to sit in said cause, Judge Wood and the district attorney's office had been in consultation with Judge Murray and had obtained his consent to succeed Judge Wood as the judge in said cause. The affiant then resorts to his conclusion that the assignment by the Judicial Council was illegal for the reasons above stated, and that Judge Murray must be presumed to have known the provisions of section 170 of the Code of Civil Procedure, and that, in insisting upon sitting in the trial of his cause notwithstanding the illegality of his appointment, Judge Murray displayed bias and prejudice against the affiant. (Here it should be noted that at the hearing on the contempt proceedings all those portions of the affidavits relating to Judge Wood were eliminated and the petitioner herein was expressly informed by the trial judge that those portions of the affidavits were not assigned as contemptuous by him and that he was not concerned with them in any way.) The portions assigned as contemptuous begin with the averments that the affiant was informed and believed that Judge Murray was biased and prejudiced against him and that for that reason the affiant believed that he could not have a fair and impartial trial before Judge Murray. The portions of the affidavit relating to the alleged consultation of Judge Murray and Judge Wood prior to the assignment of the former and the conclusion that Judge Murray must have known that his selection was illegal are assigned as contemptuous, and in this connection all those portions of the affidavit relating to the proceedings following November 27th, when Judge Wood declared himself disqualified, and including the assignment of Judge Murray by the Judicial Council and the statement of fact that the affiant had not agreed upon Judge Murray and had not signified his inability to agree upon another judge are assigned as contemptuous. It is then alleged that ''it is generally understood that said Stanley Murray is by temperament a convictor with an active leaning and preju-

dice and bias against the defendant and in favor of the prosecution'' and that for this reason his selection was suggested by Judge Wood and the district attorney. It is then alleged on information and belief that Judge Murray has shown prejudice and bias against the affiant by agreeing in advance of his motion for a continuance that he would force the affiant to trial without the attendance of the petitioner herein, who was engaged in the trial of another action in another county. This allegation is based upon the further averment that the information regarding Judge Murray's attitude in reference to a continuance of the trial came to affiant through a statement of the district attorney's office made to his counsel, the petitioner herein.

At the outset the petitioner argues that the alleged contempt was not a direct contempt committed in the immediate view and presence of the court. We are in accord with this view. Section 1211 of the Code of Civil Procedure declares that a direct contempt is one committed in the immediate view and presence of the court, or a judge at chambers, and may be punished summarily, but when the contempt is not committed in the immediate view or presence of the court, or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt. The admitted facts here are that the affidavit for the disqualification of Judge Murray was dictated and prepared by petitioner, but that it was filed personally by defendant Kelly at a time when the petitioner herein was not within the county; and that the petitioner's name did not appear upon the document as attorney for Kelly or in any other manner. It was only by subsequent examination of the defendant Kelly at a later date that the trial court was able to learn that the petitioner herein had dictated the affidavit and had furnished the major portion of the information contained therein. It is a plain perversion of the express language of the code section to say that these acts were committed within the "immediate view and presence of the court". In support of the judgment respondent relies upon *Lamberson* v. *Superior Court,* 151 Cal. 458 [11 L. R. A. (N. S.) 619, 91 Pac. 100], *In re Arnold,* 204 Cal. 175 [267 Pac. 316]; *Hughes* v. *People,* 5 Colo. 536, *Ex parte Ewell,* 71 Cal. App. 744 [236 Pac. 205], *Paddon* v. *Superior Court,* 65 Cal. App. 34 [223 Pac. 91],

*Blodgett* v. *Superior Court,* 210 Cal. 1 [72 A. L. R. 483, 290 Pac. 293], and *In re Lapique,* 26 Cal. App. 258 [146 Pac. 690]. We do not find that any one of the cases cited is in point. In the Lamberson case a contemptuous affidavit was filed in open court *personally* by the attorney who was thereupon cited for contempt. In the Arnold case the contempt consisted in the writing of personal letters to the members of the Supreme Court designed to influence the court in the consideration of a case before it, and the question whether this was a direct or an indirect contempt was not raised in that proceeding and, of course, was not determined. In the Hughes case the Colorado court had a situation similar to what appeared in the Arnold case, the affidavit therein alleged to have been contemptuous having been personally signed and sworn to by the accused. *Ex parte Ewell, supra,* also involved the sending of a contemptuous letter to the judge before whom a cause was pending, and *Blodgett* v. *Superior Court, supra,* involved the filing personally by the accused of a brief containing contemptuous matter. *Paddon* v. *Superor Court, supra,* involved the filing of an affidavit by the accused in which he admitted the service of a subpoena upon him and his refusal to obey. The question whether this was a direct contempt was decided on the citation of the Lamberson case, and we may assume from all that is said in the opinion that this act was the personal act of the accused. In *In re Lapique, supra,* the facts are not fully stated, but in this case, like the Ewell and Blodgett cases, the accused was appearing *in propria persona,* and it is fair to assume from all that appears in the opinion that the accused personally filed the affidavit as was done in the Lamberson case. There is no authority to which we have been cited holding that where an attorney gives information to his client and aids him in the preparation of an affidavit seeking the disqualification of a trial judge, but who does not appear in open court or otherwise as sponsoring said affidavit, and who does not personally present the affidavit for filing, is guilty of contempt committed in the immediate view and presence of the court. All the reason and purpose of the code section compels us to hold to the contrary. Among the acts declared contemptuous by section 1209 of the Code of Civil Procedure are "disorderly, contemptuous, or insolent behavior toward

the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding''. Could it be said that one who has given a party information from which the party might conclude that the trial judge was biased and prejudiced against him had performed an act in the immediate view and presence of the court when at some time thereafter the party upon the information so obtained filed an affidavit claiming the judge to be disqualified? However, if there be any language in any of these cases which would indicate a holding that the acts charged to the petitioner herein were acts committed in the immediate view and presence of the court that rule must fall under the amendments to section 170 of the Code of Civil Procedure, which provide a complete scheme for the establishment of the disqualification of a trial judge and the trial of that issue as an issue of fact before another judge. This on the well-known doctrine that when the reason for the rule ceases the rule itself ceases. Thus, if the preparation of an affidavit of disqualification is a direct contempt committed in the immediate view and presence of the court the judge sought to be disqualified could immediately adjudge and punish the party and his counsel for contempt although upon a hearing of the issue of disqualification before another judge it is determined that all the facts alleged in the affidavit are true and that the judge is in fact disqualified. The issue of disqualification is one which is vital to the interests of the party in whose behalf the affidavit of disqualification is filed, whereas a contempt proceeding such as we have here is one which concerns the attorney for the party alone. The care and industry with which the legislature has frequently amended this section to insure a fair and impartial trial of this issue negatives the thought that it intended that such issue may still be prejudged by the order of the judge charged with bias, and this in a summary proceeding which must necessarily determine the truth of the facts which the legislature has delegated to an impartial judge to try and determine. To insure the rights of the party, as distinguished from the rights of his counsel, it is essential that the trial of the issue of the *truth* of the allegations of bias be conducted free from any prejudgment of that question in a proceeding in which the party has had no opportunity to be heard.

By these amendments to section 170 the question of the bias and prejudice of a judge is made a matter of *trial* wherein the accused judge appears as a party without any greater privileges or immunities than any other party in any other proceeding and it would be trite to add that by a trial we mean a fair and impartial one. It cannot be said that such a trial is assured if the accused judge is to be permitted to place the party and his counsel in jail at the time when this issue is to be heard and determined.

For these reasons we conclude that the filing of an affidavit of disqualification is the institution of a trial of that issue which is expressly authorized by the code section, that such filing cannot, therefore, be deemed *prima facie* an act "tending to interrupt the due course of a trial or other judicial proceeding" (sec. 1209, Code Civ. Proc.); that, because the truth of the allegations of the affidavit and the good faith of the act of filing are issues to be tried before another judge, the judge accused is *on the face of the record* disqualified from adjudging the parties in contempt (*Briggs* v. *Superior Court,* 215 Cal. 336 [10 Pac. (2d) 53]) or of taking any other proceedings until the question of disqualification is finally determined (*Cadenasso* v. *Bank of Italy,* 214 Cal. 562 [6 Pac. (2d) 944]); that, being thus prohibited from punishing the contempt "summarily", as provided in section 1211 of the Code of Civil Procedure, in relation to direct contempts, he must proceed in the manner prescribed in the last paragraph of that section and treat the contempt as an indirect one.

But for an entirely unrelated reason the judgment here under review must be annulled, and that is that the petitioner was not given a fair trial or any trial upon the charge upon which he was convicted. At the outset of the hearing of the contempt proceedings the petitioner objected to the jurisdiction of the court and this objection was overruled. Then the trial judge, without being sworn and without offering himself for cross-examination, or otherwise, proceeded to state his views of the conduct of the petitioner and stated his own frame of mind and his own impressions as to the charges of disqualification, and then, over the objection of the accused, admitted in evidence affidavits filed by the district attorney and himself in the proceeding before Judge Murphey which questioned his

qualification to sit in the case of *People* v. *Kelly*. These affidavits having been filed in a separate proceeding were not admissible in evidence in this proceeding under any theory of our legal procedure. The unsworn statements of the trial judge were not evidence of any fact.

The petitioner called to the stand Judge Fred V. Wood. Judge Murray refused to let him testify. In the disqualification affidavit the affiant had alleged at great length the proceedings taken by Judge Wood in the discharge of the jury in the first trial of *People* v. *Kelly,* the later voluntary disqualification of Judge Wood upon the ground of his bias and prejudice, the activity of the judge in conjunction with the district attorney in the selection of Judge Murray to succeed him, the asserted illegality of the assignment of Judge Murray, and, from these facts, the affiant drew the conclusion that Judge Wood and the district attorney had purposely brought about the assignment of Judge Murray and had given such wide publicity to the admitted prejudice of the former that Judge Murray would come to the trial of the cause with a fixed prejudice against the defendant and an inclination to carry out the prejudices of Judge Wood. The petitioner offered to prove by the witness that, before he disqualified himself in the Kelly case, Judge Wood brought about the selection of Judge Murray, and that afterward he sought to direct the proceedings in the Kelly case. He offered to prove by the witness "everything set forth in the verified statement where Judge Wood is referred to". This offer was rejected on the ground that it was incompetent, irrelevant and immaterial. This ruling was not mere error. It was a complete denial of a right of trial.

The tendered evidence was of course material to the issues involved. If all the statements relating to Judge Wood were true then the entire good faith of the affidavit of disqualification was established and the petitioner should have been adjudged not guilty of contempt. If these facts were true it was the privilege, as well as the duty of the petitioner to his client, to present those matters in an assignment of disqualification. We should not, however, be understood as passing upon the truth of any of these allegations or as approving the intemperate language in which the

allegations are made. But what we wish to emphasize is that all the matter was eliminated from the contempt proceedings by Judge Murray and the petitioner was commanded to answer the charge of contempt as limited to the other portions of the affidavit. Those matters were, however, an integral part of the facts from which Kelly concluded that Judge Murray bore him prejudice; they were part of the ''information'' upon which other allegations made on information and belief were based, and they were substantial evidence of the good faith of the affidavit.

Elaborate findings were made following the hearing in which it was found that all the allegations of the disqualification affidavit were untrue; but there is not a word in the evidence upon which this finding can be based. In filing the affidavit of disqualification the affiant drew the conclusion that he believed Judge Murray was biased and prejudiced against him and stated the information upon which that belief was founded. There is nothing in this proceeding which goes to show that that information was not honestly given and that those beliefs were not honestly entertained. There is nothing to show that the petitioner herein did not act in good faith when he gave this information to his client in the preparation of the affidavit. The finding of want of good faith is without any evidentiary support. On the other hand it must be presumed that the petitioner acted in good faith and no presumptions can be indulged in to support the judgment. (*Hotaling* v. *Superior Court*, 191 Cal. 501 [29 A. L. R. 127, 217 Pac. 73]; *In re Lake*, 65 Cal. App. 420, 427 [224 Pac. 126].) Though it was found that all the allegations in the affidavit of disqualification were false the finding is manifestly error because a large portion of the allegations of that affidavit are based upon matters of record which are not disputed.

Thus, even though we were to treat this as a direct contempt, there is nothing in the portions of the affidavit to which the proceedings were limited by the respondent which is contemptuous *per se* or which upon its face appears to be purposely and gratuitously offensive. The paper was filed in accordance with the express privilege given by section 170 of the Code of Civil Procedure, and, if it was filed in bad faith, or if matter purposely or gratuitously

offensive was included (*Hotaling* v. *Superior Court, supra*) or if it contained untrue charges against the court which the petitioner knew were untrue and which were included for the purpose of giving offense—these were all matters which had to be proved by competent evidence. It is not a case, therefore, in which the trial judge may rest ·upon the record without proof and require the accused to make answer. If Judge Murray was selected by the Judicial Council without the parties having been given an opportunity to agree upon another judge, as required by section 170 (and here we must say that the record is all with the petitioner, notwithstanding the belated "amendment" of the clerk's minutes after the point had been raised in this proceeding), then the defendant Kelly and his counsel had reason to believe that Judge Murray was unlawfully selected for that position, and they had the right to assume that Judge Murray was familiar with the law in that respect, and that, in insisting upon sitting illegally he was doing so for the purpose of carrying out the alleged prejudices of Judge Wood. If it were true, as alleged in the affidavit, that Judge Murray was *by common reputation* a "convictor", the fact that Judge Wood was solicitous in having him selected to try the Kelly case was a fact which was sufficient to cause the defendant and his counsel to believe that Judge Murray would be unfriendly to them in the trial of the case. In this connection the *reputation* of Judge Murray is not denied. In his counter-affidavit filed in the disqualification proceedings he denied that he was in fact a "convictor", but· this was not an issue. The charge that Judge Murray had agreed in advance of a request that he would deny defendant's motion for a continuance was based upon information from the assistant district attorney. This may have been mere idle boasting, but it formed the basis for the defendant's conclusion, and it is not denied by any evidence in the proceeding.

It was necessary to prove by competent evidence that the actions of the petitioner in preparing the affidavit of disqualification were contemptuous as a matter of fact and no evidence having been offered to that end the judgment of conviction cannot stand. It is not necessary to discuss the other grounds raised in the petition.

The order is annulled and the petitioner released from custody.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 3, 1932, and the following opinion then rendered thereon:

There is no provision of law for a rehearing in this court in *habeas corpus* cases, except in those cases specified in section 1506 of the Penal Code of which this is not one. (*Ex parte Robinson*, 71 Cal. 608, 611 [12 Pac. 794]; *In re Washer*, 200 Cal. 598, 609 [254 Pac. 951]; *In re Edwards*, 99 Cal. App. 541, 545 [278 Pac. 910, 290 Pac. 591]; *In re Livingston*, 108 Cal. App. 716, 720 [292 Pac. 285].)

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 20, 1932.