[L. A. No. 26430. In Bank. Jan. 10, 1962.]

GEORGE H. CHULA, Petitioner, v. THE SUPERIOR
COURT OF ORANGE COUNTY, Respondent.

George H. Chula, in pro. per., A. L. Wirin, Ward Sullivan, Russell E. Parsons, Julius L. Samson, Joan Martin, Walter Gordon, Richard Welch, Z. B. West, P. Basil Lambros and Taylor Peterson for Petitioner.

Stephen K. Tamura, County Counsel, Adrian Kuyper, Clayton H. Parker and George F. Holden, Assistant County Counsel, for Respondent.

McCOMB, J.—Petitioner, an attorney at law, seeks a writ of certiorari to review an order of respondent court punishing him for contempt of court.

### CHRONOLOGY

1. September 15, 1960, Ossie Hanson (hereinafter referred to as "defendant") retained the law firm of Monroe & Chula to represent him in a criminal action charging him with three counts of violating sections 288 and 288a of the Penal Code.

2. September 30, 1960, and October 26, 1960, a preliminary hearing was held in the Municipal Court of the Anaheim-Fullerton Judicial District, and defendant was bound over to answer in the superior court.

3. January 31, 1961, defendant appeared in the Superior Court of Orange County with his counsel, James C. Monroe, and moved for a dismissal of all three counts. The court dismissed counts I and II, but denied the motion as to count III. A jury trial was waived.

4. Thereafter, following a court trial, defendant was found guilty of one count of violating section 288 of the Penal Code. Criminal proceedings were suspended and sexual psychopathy proceedings instituted, at which defendant was represented by petitioner.

5. March 17, 1961, defendant's motion for a new trial was denied and the matter continued for hearing relative to the sexual psychopathy proceedings and pronouncement of sentence to March 31, 1961, at 9:15 a. m., in department 5, and petitioner and defendant were ordered to return at that time.

6. March 31, 1961, when the case of *People* v. *Ossie Hanson* was called at 9:50 a. m.,[1] petitioner did not appear in court. However, about 20 minutes later Mr. Mueller, an associate of petitioner, came into court and stated that petitioner had asked him to appear for him at the hearing.

7. April 7, 1961, an order to show cause in re contempt was issued and served upon petitioner, ordering him to appear before respondent court at 9:15 on April 14, 1961, to show cause why he should not be punished for contempt. There-

---

[1] At the subsequent contempt hearing the court stated it had delayed calling the matter because of the absence of petitioner.

after by stipulation the matter was continued until April 28, 1961, at 9:15 a. m.

8. April 28, 1961, after a hearing, at which petitioner and Mr. Mueller testified in petitioner's behalf, respondent court stated: "It is the judgment of the Court that you are in contempt of court. It will be the sentence of this court that you be confined to the County Jail for four days."

9. May 1, 1961, respondent court entered, *nunc pro tunc* as of April 28, 1961, the following order in the case of *The People of the State of California,* Plaintiff, vs. *Ozzie Hanson,* Defendant: "JUDGMENT AND ORDER IN RE CONTEMPT. The contempt proceedings against George H. Chula herein, having come on regularly on an order to show cause before the undersigned April 28, 1961, and the said George H. Chula appearing in his own behalf, and evidence, oral and documentary having been presented and argued, and the matter having been submitted, and good cause appearing therefor, and it appearing that: 1. A lawful order was given to the said George H. Chula to return and appear in the same courtroom as the one in which the order was made, to wit: Department 5; 2. The order was given pursuant to a continuance of this case, in which the said George H. Chula was counsel for the defendant; 3. The order was given on March 17, 1961, and it was an order to return and appear at 9:15 a. m., March 31, 1961; 4. The said George H. Chula was present and heard and understood the order; 5. The said George H. Chula had the ability to appear at the ordered time and place; and 6. The said George H. Chula did wilfully neglect and fail to so appear without sufficient reason or excuse for such failure.

"It Is HEREBY ORDERED, ADJUDGED AND DECREED that the said George H. Chula is in contempt of this Court in his failure to obey such order, and that Defendant be taken into custody of the Sheriff of the County of Orange, and be confined to the County Jail for a period of four (4) days;

"BE IT FURTHER ORDERED that execution of this order be stayed for a period of ten (10) days from the date hereof, to wit: until May 9, 1961, or, if within such period of ten (10) days a petition for a writ to alter this order is filed in the Court of Appeal or the Supreme Court of this State, then until the granting or denial thereof becomes final.

"This order is to be entered nunc pro tunc April 28, 1961.

"Dated: May 1, 1961.

John Shea
Judge of the Superior Court"

10. May 2, 1961, the clerk entered the following minute order relative to the April 28, 1961, proceedings: "It is the judgment of this Court that counsel for defendant, George Chula, is in contempt of Court. Said George H. Chula ordered confined to the County Jail for a period of four (4) days."

11. May 9, 1961, respondent court entered, *nunc pro tunc* as of April 28, 1961, an amended judgment and order *in re* contempt. The only difference between the order entered May 1, 1961, and the amended order was that in the latter the words "that the said George H. Chula be taken into custody of the Sheriff of the County of Orange" were substituted for the words "that Defendant be taken into custody of the Sheriff of the County of Orange," and the expiration of the 10-day period for the stay of execution thereof appears as May 19, 1961, instead of May 9, 1961.

*Questions: First. Was the order of May 1, 1961, adjudicating petitioner in contempt void for the reason that it did not state facts showing petitioner guilty of contempt?*

*No.* ▇▇▇ The failure of an attorney, without valid excuse, to be present in court at the announced time for the sentencing of a client whom he is representing constitutes a contempt committed in the immediate view and presence of the court and hence a direct contempt which the court is empowered to punish summarily under section 1211 of the Code of Civil Procedure. (*Cf. Lyons* v. *Superior Court,* 43 Cal.2d 755, 759 [5] [278 P.2d 681].)

▇▇▇ An order adjudging a person guilty of contempt in the immediate view and presence of the court must recite facts showing acts which constitute a contempt. (Code Civ. Proc., § 1211.) This is jurisdictional, and an order which assumes to punish summarily a direct contempt of court is void unless it shows on its face facts sufficient to constitute a legal contempt. (*Raiden* v. *Superior Court,* 34 Cal.2d 83, 86 [2] [206 P.2d 1081]; *In re Wells,* 29 Cal.2d 200, 201 [2] [173 P.2d 811]; *Ex parte Hoar,* 146 Cal. 132, 133 [79 P. 853].) ▇▇▇ Such facts must be stated with sufficient particularity to show, without the aid of speculation, that a contempt actually occurred. (*Blake* v. *Municipal Court,* 144 Cal.App.2d 131, 136 [7] [300 P.2d 755] [hearing denied by the Supreme Court].)

▇▇▇ In the present case it is clear that the order of May 1, 1961, adjudicating petitioner in contempt meets the foregoing requirement, since facts are stated therein showing

that petitioner in the presence of the court committed a contempt.

There is no merit in petitioner's contention that the order adjudicating him guilty of contempt did not state facts but merely conclusions of law. A recital that petitioner "had the ability to appear" is a proper conclusion of ultimate fact conclusive on this court upon review. (*Ex parte Levin*, 191 Cal. 207, 208 [1] [215 P. 908]; *Ex parte Spencer*, 83 Cal. 460, 462 [23 P. 395, 17 Am.St.Rep. 266]; *In re Carpenter*, 36 Cal.App.2d 274, 276 [1] [97 P.2d 476]; *In re Wilson*, 123 Cal.App. 601, 603 [2] [11 P.2d 652].)

*In re McCausland*, 130 Cal.App.2d 708 [279 P.2d 820], relied on by petitioner, is factually distinguishable from the present case. In such case the order was annulled because it consisted solely of a finding that the defendant there was guilty of "wilfully violating" an order. The court pointed out that there was no recital in the order that the petitioner had the ability to comply with it. In the present case there is such a recital in the order.

*In re Cardella*, 47 Cal.App.2d 329 [117 P.2d 908], also relied on by petitioner, was expressly disapproved in the later case of *In re Hadley*, 57 Cal.App.2d 700, 703 [135 P.2d 381], as being contrary to the great weight of authority.

Finally, *In re Meyer*, 131 Cal.App. 41 [20 P.2d 732], cited by petitioner, is factually distinguishable from the present case, for the reason that in the *Meyer* case the petitioner then before the court was discharged because he had not been served with the prior order of the court, and special findings showed his inability to comply with the court's order between the date of service of the notice of the order and the date of the contempt hearing.

Second. *Were petitioner's acts contemptuous acts sufficient to give the court jurisdiction to punish him for contempt?*

*Yes.* The sole function of the writ of certiorari in a contempt matter is to annul proceedings taken in excess of jurisdiction, and this court will consider the evidence only for the purpose of ascertaining whether there was any substantial evidence before the trial court to sustain its jurisdiction. (*Times-Mirror Co.* v. *Superior Court*, 15 Cal.2d 99, 115 [1] [98 P.2d 1029]; *Bridges* v. *Superior Court*, 14 Cal.2d 464, 484 [8] et seq. [94 P.2d 983].)

 The question whether the acts complained of can constitute a contempt is jurisdictional, however, and in the absence of evidence showing that an actual contempt of court

was committed, the order of commitment should be annulled. (*Brunton* v. *Superior Court*, 20 Cal.2d 202, 204 [1] [124 P.2d 831]; *Chula* v. *Superior Court*, 109 Cal.App.2d 24, 26 [1] [240 P.2d 398]; *Wilde* v. *Superior Court*, 53 Cal.App.2d 168, 178 [8] [127 P.2d 560].) Accordingly, we have examined the record for the purpose of determining whether petitioner's acts were in fact contemptuous acts sufficient to give the court jurisdiction to punish him for contempt.

The evidence shows that when the matter was called at the March 17 hearing, neither petitioner nor defendant was present, and the court ordered a bench warrant issued for defendant's arrest and an order issued for petitioner to show cause why he should not be punished for contempt for his failure to appear. Petitioner and defendant appeared about 10 a.m., at which time petitioner said that his calendar showed the hearing was set for 10 a.m. and that he and defendant had been waiting in his office.

A discussion then took place between petitioner and the trial judge regarding petitioner's failure to appear at the scheduled time at a number of other hearings in the trial court. The court vacated the order for the bench warrant and the order to show cause, and after argument it denied defendant's motion for a new trial.

The probation department had not been notified of the hearing and had not prepared its report. The application for probation and pronouncement of judgment were therefore continued to March 31 at 9:15 a.m., a time set to suit petitioner's convenience. The court admonished petitioner to be there at that time with defendant, stating: "Let's remember it. 9:15 a.m. I will set the matter down at 9:15 a.m. on Friday, the 31st day of March, in this courtroom. Each of you are ordered and directed to report here at that time."

The court's minute order of March 17, 1961, reads in part: "The hearing re: Application for probation and pronouncement of judgment is continued to March 31, 1961 at 9:15 a.m. in Department 5. George Chula and the defendant ordered to return at that time."

At the hearing on the order to show cause there was evidence that after the March 17 hearing petitioner learned it would be necessary for him to be in the Indio Branch of the Superior Court of Riverside County on March 30 on a matter which supposedly would take two days; that the Indio matter was concluded on March 30 and petitioner so advised his office that evening; and that due to lack of transportation petitioner had spent the night at a friend's home in Palm

206

Springs and did not return to Santa Ana until after 10 a. m. March 31.

The record also shows, however, that when the matter was called at 9:50 a. m. March 31, the court asked defendant where his counsel was, and defendant replied, "I stopped at his office and he said he'd be here at 9:15, but he isn't here."

 Accordingly, since the record shows that the trial court ordered petitioner to appear personally at the March 31 hearing, and there was substantial evidence to support the court's finding that petitioner had the ability to appear at the ordered time and place but nevertheless failed to appear, without sufficient reason or excuse for such failure, the trial court could justifiably hold him guilty of contempt on the basis of his acts as shown by the evidence.

Third. *Did respondent court lack jurisdiction to amend the order of May 1, 1961, in the manner in which it attempted to do so, and was the purported amended judgment and order in re contempt therefore void?*

*No.* Where an order or judgment incorrectly records the completed judicial action of a court, the court can thereafter correct clerical errors by making an amendment to its order truly reflecting the court's action. (*Bastajian* v. *Brown,* 19 Cal.2d 209, 214 [1] [120 P.2d 9]; *Carpenter* v. *Pacific Mut. Life Ins. Co.,* 14 Cal.2d 704, 707 [1] [96 P.2d 796]; *Waters* v. *Spratt,* 166 Cal.App.2d 80, 85 [3] [332 P.2d 754]; *Culligan* v. *Leider,* 65 Cal.App.2d 51, 56 et seq. [149 P.2d 894].)

 The order of May 1, 1961, showed completed judicial action. However, there was a clerical error, in that it ordered "that Defendant be taken into custody of the Sheriff of the County of Orange," while in truth and in fact the trial court had ordered that petitioner be taken into the custody of the Sheriff of the County of Orange. Therefore, it was proper for the court to correct its clerical error or misprision.

The original order[2] correctly, except for the clerical error, reflected the court's decision.

The trial court's order is affirmed.

Schauer, J., and White, J., concurred.

GIBSON, C. J.—I concur.

In the usual case of direct contempt all the relevant events

[2]Petitioner, in his application and points and authorities, continually refers to the clerk's minute order of April 28, 1961, as the judgment

occur in the immediate view and presence of the court, whereas indirect contempt ordinarily consists of acts out of the presence of the court. In the present case we have what might be termed a hybrid situation; the charge of contempt arose from events occurring in the presence of the court which it is claimed should be excused by matters taking place outside the courtroom.

It is obvious that the disruption of judicial proceedings caused by the absence of an attorney occurs in the immediate view and presence of the court. The burden of excusing the obstruction must, of course, be placed upon the attorney. (*Lyons* v. *Superior Court*, 43 Cal.2d 755 [278 P.2d 681].) Where the attorney, although notified by the court to appear at a specific time, fails to do so and does not offer an excuse, all matters relevant to the determination of contempt happen in court. In those cases where the attorney seeks to excuse his conduct, the excuse ordinarily will be based on matters occurring out of court. However, the contingency that an attorney who is absent may later offer an excuse should not compel a judge, when instituting proceedings, to treat the conduct as indirect rather than direct contempt.

Much of the procedure required by statute with respect to a charge of indirect contempt (see Code Civ. Proc., §§ 1211, 1212, 1217) would be pointless in a situation like the one before us and is unnecessary for the protection of the rights of attorneys or for the orderly administration of justice. When it is considered that the failure of an attorney to appear at the announced time for resumption of judicial proceedings occurs in the presence of the court and is shown by its records, there is no reason to require the judge to file an affidavit or statement of facts setting forth the basis of the charge of contempt or to require him to give or obtain testimony establishing the facts. The rights of the attorney will be fully protected by an order to show cause apprising him of the charge against him followed by an opportunity to be heard. If the attorney claims that his conduct is excusable, he is entitled to a hearing where he may offer evidence.

Petitioner was apprised of the charge against him by the

---

of the court finding him guilty of contempt. This is an error. Minute order entries of the clerk are not the orders themselves, but are merely synopses of orders made by the court, and do not determine the extent of the judicial power of the court when a formal order has been signed and filed. (*Rose* v. *Superior Court*, 140 Cal.App. 418, 427 [3] et seq. [35 P.2d 605].)

order to show cause, and he was given a full opportunity to present evidence in support of his claim that his conduct was excusable. Under all the circumstances, the court was justified in concluding that petitioner did not show a satisfactory excuse for his failure to appear as directed.

TRAYNOR, J.—I dissent.

On the authority of *Lyons* v. *Superior Court*, 43 Cal.2d 755, 759 [278 P.2d 681], the majority hold that "The failure of an attorney, without valid excuse, to be present in court at the announced time for the sentencing of a client whom he is representing constitutes a contempt committed in the immediate view and presence of the court *and hence a direct contempt which the court is empowered to punish summarily under section 1211 of the Code of Civil Procedure.*" (Italics added.) Thus, as in the *Lyons* case, the majority would condone a summary procedure that does not contemplate either notice or hearing. The courts of other jurisdictions that have considered this problem have held uniformly that such a contempt may be adjudicated only after adequate notice and hearing. (*Klein* v. *United States*, 151 F.2d 286, 288 [80 App. D.C. 106] ; *Lee* v. *Bauer* (Fla. Sup. Ct.) 72 So.2d 792, 793; *In re Clark*, 208 Mo. 121, 146, 149 [106 S.W. 990, 15 L.R.A. N.S. 389] ; *Weiland* v. *Industrial Com. of Ohio*, 166 Ohio St. 62, 66 [139 N.E.2d 36] ; *Ex parte Hill*, 122 Tex. 80, 82 [52 S.W.2d 367] ; *State* v. *Winthrop*, 148 Wash. 526, 531-532 [269 P. 793, 59 A.L.R. 1265].) The *Lyons* case has stimulated widespread criticism. (39 Minn. L. Rev. 895; 7 Hastings L.J. 312; 5 Duke L.J. 155; 9 Vanderbilt L. Rev. 93.) Its holding appears to be unique.

The classification of contempts as direct and indirect is merely a semantic device for differentiating contempts that can be adjudicated summarily from those that can be adjudicated only after adequate notice and hearing. When a contempt occurs within the "immediate view and presence of the court" the judge is fully informed of all facts necessary to adjudicate the guilt or innocence of the alleged contemner. When, however, the court is not so informed of such facts, notice and hearing are necessary to get them. (*Bulcke* v. *Superior Court*, 14 Cal.2d 510, 515 [94 P.2d 1006] ; *In re Cunha*, 123 Cal.App. 625, 633 [11 P.2d 902, 18 P.2d 979] ; *Lapique* v. *Superior Court*, 68 Cal.App. 407, 412, 413 [229 P. 1010] ; see Dangel, Contempt, § 14.) Indeed, due process of law requires notice and hearing in such a case. (*In re*

*Oliver,* 333 U.S. 257, 273-278 [68 S.Ct. 499, 92 L.Ed. 682];
*Cooke* v. *United States,* 267 U.S. 517, 535-537 [45 S.Ct. 390,
69 L.Ed. 767]; *Bulcke* v. *Superior Court, supra,* pp. 514-515;
accord: *Clark* v. *United States,* 61 F.2d 695, 699, affd. 289
U.S. 1 [63 S.Ct. 465, 77 L.Ed. 993]; *In re Collins,* 329 Mich.
192, 196 [45 N.W.2d 31]; see also *Carson* v. *Ennis,* 146 Ga.
726, 728 [92 S.E. 221, L.R.A. 1917E 650]; *People* v. *Rosenthal,* 370 Ill. 244, 248-249 [18 N.E.2d 450, 125 A.L.R. 127];
*Cushman Co.* v. *Mackesy,* 135 Me. 490, 494 [200 A. 505, 118
A.L.R. 148]; *In re Clark, supra; State* ex rel. *Beck* v. *Lush,*
168 Neb. 367, 370 [95 N.W.2d 695]; *Ex parte Mylius,* 61
W.Va. 405, 407 [56 S.E. 602, 10 L.R.A. N.S. 1098, 11 Ann.
Cas. 812].)

In stating that "The failure of an attorney, *without valid
excuse,* to be present . . . constitutes . . . a direct contempt"
(italics added), the majority opinion itself implicitly concedes that petitioner's contempt, if any, cannot be subject to
summary punishment. The absence of a valid excuse is an
indispensable element of the contempt. The trial judge could
not discover the nature of the excuse or determine its validity
without a hearing.

In the *Bulcke* case, *supra,* this court held: "The power of
a court to punish [summarily] for a direct contempt is based
upon the judge's knowledge of the commission of the act by
the contemner. A judge usually cannot say with any certainty
that a letter or telegram received by him purporting to be
signed by a certain person was either written or sent by that
person; hence such an act, if contumacious, should be classified as an indirect contempt." Similarly, a judge usually
cannot say with any certainty that an attorney's absence is
"without valid excuse." Hence, such absence, if contumacious, should be punished only after notice and hearing.

The trial judges both in this case and in the *Lyons* case
recognized that they did not have the information necessary
to decide the guilt or innocence of the alleged contemners,
and so held hearings in which the excuses were presented and
judged as to their sufficiency. In the present case the hearing
followed formal notice in the form of an order to show cause.
In the *Lyons* case there was no such formal notice. The judge
orally ordered the attorney to show cause why he should not
be held in contempt and decided immediately upon the
validity of the excuse.

Section 1211 and section 1217 of the Code of Civil Procedure establish two procedures for the adjudication of con-

tempts. The first is summary, and may be invoked when the judge has in his possession all facts necessary for the adjudication of guilt or innocence. The second applies when the judge does not have such facts, and requires that "an affidavit . . . be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officers." The accused is notified of the charge against him, and the affidavit or statement of facts, like a complaint, indictment, or information, frames the issues to be adjudicated at the hearing required by section 1217.

Although the Legislature may not be free to limit the inherent power of constitutional courts to punish contempts by determining that certain acts shall not constitute contempt, it clearly may "provide for the procedure by which such contempt shall be tried and punished. . . ." (*Bridges* v. *Superior Court,* 14 Cal.2d 464, 480 [94 P.2d 983].) Denial of this power "would be tantamount to a denial of legislative power to regulate the practice and procedure by which our courts are governed, a power which, without constitutional authority, is universally recognized in all states where the code system of pleading and practice prevails." (*In re Garner,* 179 Cal. 409, 412 [177 P. 162].) The Legislature "may provide rules of procedure . . . which, if adequate for the purpose designed, must be deemed operative in controlling the action of the court." (*Ibid.,* p. 413.)

Thus, any departure from the procedure set forth in the Code of Civil Procedure must be justified by a demonstration that they are inadequate, that they provide either too little or too much protection to those accused of contempt. There is no suggestion that the statutory procedures are not sufficiently strict. There is no suggestion that the hearing required by section 1217 is less than that necessary to satisfy due process of law. Apparently any disagreement with the statutory procedures is based upon the view that the notice requirements of section 1211 are too strict. But this requirement, too, is minimum. The order to show cause filed by the judge in this case, for example, is a sufficient statement by a judicial officer to institute proceedings under section 1211.

That order provides: "Please take notice that you George H. Chula, are hereby directed and ordered to appear before this Court in Department 5 thereof at 9:00 A. M., April 14, 1961, then and there to show cause why you should not be held in contempt of this Court for willful failure to obey a

lawful order of this Court made in this case March 17, 1961, to wit: To appear at 9:15 a. m. before this Court, Friday, March 31, 1961." By alleging that petitioner's failure to appear was "willful," the order meets the requirement that a statement of facts under section 1211 charge knowledge of the order allegedly disobeyed (see *Phillips* v. *Superior Court,* 22 Cal.2d 256, 258 [137 P.2d 838]) and ability to comply. (See *Mery* v. *Superior Court,* 9 Cal.2d 379, 380 [70 P.2d 932].) Petitioner's failure was not willful if he did not know of the order or if he was unable to appear through no fault of his own. The allegedly contemptuous act—the failure to appear as ordered—is specified in the order. The order to show cause thus meets the requirements for initiation of indirect contempt proceedings under section 1211 by framing the issues to be adjudicated at the subsequent hearing. (See *Commercial Bank* v. *Superior Court,* 192 Cal. 395, 396 [220 P. 422]; *Berger* v. *Superior Court,* 175 Cal. 719, 720-721 [167 P. 143, 15 A.L.R. 373]; *Strain* v. *Superior Court,* 168 Cal. 216, 220-222 [142 P. 62, Ann.Cas. 1915D 702]; *Frowley* v. *Superior Court,* 158 Cal. 220, 222 [110 P. 817]; *Otis* v. *Superior Court,* 148 Cal. 129, 130-131 [82 P. 853]; *Hutton* v. *Superior Court,* 147 Cal. 156, 159 [81 P. 409]; *Rogers* v. *Superior Court,* 145 Cal. 88, 91 [78 P. 344].) The hearing held completed the procedure in accordance with section 1217 of the Code of Civil Procedure.

The procedure followed in the *Lyons* case did not comply with section 1211, for the oral "order to show cause" employed by the judge in that case gave the accused no time to prepare his defense, to obtain assistance, or to marshall evidence in support of his explanation. There is no justification for permitting trial judges to institute contempt proceedings in cases of this kind without providing meaningful notice and time for preparation.

The statutory procedures for contempts as to which the court is not fully informed are entirely adequate for this kind of case, and are therefore controlling. (*In re Garner, supra.*) Judicial creation of a new procedure, unelaborated by statute or by a background of decided cases, can only add confusion that may easily be avoided by use of the well-defined statutory procedures with which our courts have had extensive experience. Anything less than the protections afforded by these procedures would be inadequate.

Although the proper procedures for adjudicating the contempt charged in this case were followed, the facts established

do not support the judgment. Petitioner was not sole counsel for his client, for the client had retained the firm of Monroe and Chula to represent him and Monroe represented the client before and during the trial. "We will take judicial notice of the fact that in California it is, and for a long time has been, a general custom sanctioned by recognition of the courts for attorneys at law singly and by firms to employ attorneys at law to assist in legal work placed in their care, including appearances in court without the formality of being made attorneys of record. . . . The simple action of petitioner in line with the established custom neither satisfied the requirements of contempt of court nor the requirements for conviction of that offense." (*Raskin* v. *Superior Court*, 138 Cal. App. 668, 670 [33 P.2d 35].) In the *Raskin* case it was held that a substitute could not be held in contempt merely for appearing as a substitute. Similarly, the principal attorney who procures a competent substitute cannot be held in contempt.

Petitioner testified that he obtained a substitute, an associate in his office, because he was to be away in connection with another case. His testimony was supported by that of his associate and substitute. This testimony is not in conflict with the client's statement that "I stopped at his office and he said he'd be here at 9:15, but he isn't here." The court asked only where the client's "counsel" was, and he did not indicate to whom he had spoken. Since other attorneys than petitioner represented the client, there is no basis for inferring that the client spoke to petitioner rather than to one of the others. Moreover, the client did not say whether he had stopped at petitioner's office on the morning of the hearing or at some previous time.

Had the substitute appeared punctually, there would have been no basis for a contempt charge. Nor can petitioner be punished for his substitute's tardiness unless he authorized or should have foreseen it. Even if the facts might support a charge of contempt against the substitute, they do not support such a charge against petitioner.

Of course unexcused absences by counsel cannot be condoned. Even though the record indicates that petitioner has frequently failed to appear in court when he should, he was not charged with such misconduct and it cannot justify holding him in contempt of an order he did not violate.

Peters, J., and Dooling, J., concurred.