[No. D004704. Fourth Dist., Div. One. Aug. 7, 1986.]

In re JAIME BERNAL de la PARRA on Habeas Corpus.

**COUNSEL**

Burton Shamsky for Petitioner.

No appearance for Respondent.

Williams & Rucker and Charles Anthony Williams for Real Party in Interest.

**OPINION**

**BUTLER, J.**—Jaime Bernal de la Parra (Bernal) seeks review of the trial court order finding him in contempt of court for refusing to answer inter-

rogatories and incarcerating him for 15 days.[1] In order to review the petition, we released Bernal from custody; he had then served 10 days in the county jail. We now conclude the petition warrants extraordinary relief because the contempt proceedings are jurisdictionally infirm and the offenses do not warrant imprisonment.

Habeas corpus is a suitable remedy to review a contempt citation. (*In re Buckley* (1973) 10 Cal.3d 237 [110 Cal.Rptr. 121, 514 P.2d 1201, 68 A.L.R.3d 248].) Extraordinary relief in the form of a writ of prohibition is also appropriate to prevent imposition of unauthorized discovery sanctions. (*Lund* v. *Superior Court* (1964) 61 Cal.2d 698, 709-710 [39 Cal.Rptr. 891, 394 P.2d 707].) Here habeas corpus is the correct vehicle to review the court order because of petitioner's resulting confinement.

Real party Robert Tyler, plaintiff, complained against Bernal alleging fraud, constructive trust, conversion, and the right to dissolution and an accounting, all growing out of an alleged oral partnership between Tyler and Bernal created in Chula Vista, California in November 1978, contemplating the sale to Mexican banks of a computer known as "Controlex" designed exclusively for use in Mexico and manufactured there. Bernal is a Mexican citizen operating a business in Tijuana, Mexico; he presently resides in El Cajon, California.

Bernal denied the existence of any partnership and cross-complained against Tyler for various alleged derelictions including fraud, conversion, and interference with contract and with prospective economic advantage.

Bernal claims the business involved making and selling the Controlex computers in Mexico, belongs exclusively to Bernal and his Mexican partners and is situated in Tijuana, Mexico. Bernal unsuccessfully attempted to have the instant action stayed on a forum non conveniens basis in favor of trial in Mexico. (Tyler opposed that motion upon the ground, among others, that when he went to Tijuana to locate Bernal, the latter had Tyler thrown into the Tijuana jail where he remained for a week until relatives obtained his release. Accordingly, Tyler declined to further try his luck with the Mexican judicial system.)

During the discovery proceedings in this action, Tyler in a sense had his revenge, for Bernal has also served time in jail, in San Diego, as a result of these events. In November 1985 Tyler served interrogatories upon Bernal including these questions:

---

[1] According to Bernal, the sentence was calculated by imposing three days of custody for refusal to answer each of five questions.

"1. With the exception of the original nine Controlex machines referred to in previous interrogatories, do you or does any member of your immediate family now have, or have ever had, any interest in any electronic machine which is now used, or has ever been used, by a bank in Mexico for the purpose of which the Controlex machine was designed?

"2. If the answer to Interrogatory No. 1 above is in the affirmative, give each and every name by which each of these machines was known.

"3. For each machine name listed in Interrogatory No. 2 above, give the quantity of machines that ever existed known by that name.

"4. For each and every machine listed in Interrogatory No. 3 above, describe where each machine went when it left your possession, or if still in your possession, give the name of any entity which ever rented or leased the machine from you or your immediately family.

"5. For each and every machine listed in Interrogatory No. 3 above, list the amount of gross income you or any member of your immediate family has realized from the sale, rental, lease or other financial arrangement involving that machine."

Initially, Bernal's attorneys delayed answering these questions, without specifically objecting to them. Finally in March 1986, after Bernal's attorney had unsuccessfully attempted to obtain an ex parte order excusing him from responding to the interrogatories or alternatively giving him more time, Tyler filed a motion to compel answers, on March 25, 1986. Responding, Bernal objected to the interrogatories on the grounds the information sought is privileged and confidential and should not be discoverable before Tyler has proven that an oral partnership in fact existed. Further, Bernal argued disclosure would cause irreparable harm to his current Mexican business interests because Tyler had in the past committed "acts of conversion, violence and sabotage against respondents' business clientele" so that it would be dangerous for Bernal to tell Tyler the location of the computers. Further, Bernal said the laws of Mexico prevented him from divulging the requested information over the objection of his Mexican partners. He said a restraining order prevents Bernal on threat of imprisonment from disclosing the records of the Mexican partnership, and attached a copy of the alleged order to his response.

The motion to compel was heard on April 30, 1986. Tyler's counsel argued the alleged Mexican "order" was not a court order at all but rather a certification by a United States consul to Mexico substantiating the assertion of a Mexican individual that he would bring suit against Bernal if

the latter disclosed information. (The individual was one Jorge Ortiz Diaz, a business associate of Bernal.) Also, Tyler's counsel pointed out the questions did not seek business records, only answers. The trial judge concluded Bernal should answer the questions and arranged for a deposition to be taken in the judge's chambers, the contents to be sealed pending the judge's determination of admissibility.

We have no record of the proceedings which took place in the judge's chambers on May 15, 1986. According to Tyler (and not contradicted by Bernal), Bernal argued there was a Mexican order prohibiting him from answering the questions; the court found there was no such order and ordered Bernal to answer the interrogatories, as well as imposing sanctions of $600 for failure to respond sooner. Bernal answered "yes" to the first interrogatory but refused to answer the others, thus admitting that Bernal or his immediate family have interests in electronic machines like the Controlex now being used by Mexican banks, but refusing to identify the quantity and location of the machines or give financial information about their sale. The judge found Bernal in contempt of court for refusing to answer the remaining four questions and imposed punishment of 15 days.[2] The commitment order is extremely brief, saying only "By order of Judge Beard resp. Jaime Bernal is found in contempt of Court for failure to comply with court order. Court orders 15 days in custody . . . ."

In this writ proceeding, Bernal offers as a supplemental exhibit the declaration of Professor Jorge A. Vargas, a Mexican law expert, stating his opinion Mexican law forbids Bernal from disclosing any information about his licensed Mexican business over his partners' objections, and also, Bernal could not legally enter into a partnership with Tyler, who is not a Mexican national, without express authorization of the Mexican government. Since, however, this declaration was not before the trial court and does not constitute matter which we may judicially notice, we do not rely on it or consider it part of the record in this matter.

DISCUSSION

Code of Civil Procedure section 2034, subdivision (b)(1) authorizes a court to punish as a contempt the refusal to obey the court's discovery orders made under section 2034, subdivision (a). However, we have found but one reported decision where a court actually contemplated incarcerating an individual who refused to answer questions, and there, public interests were

---

[2]The copy of the commitment order furnished this court shows a commitment for 15 days, and does not explain how the time was calculated. Bernal says he received three days for each of five refusals. Since he answered one of the four questions, the basis for the sentence is unclear.

at stake. (*Rosato* v. *Superior Court* (1975) 51 Cal.App.3d 190 [124 Cal.Rptr. 427], finding inherent power in court to compel a reporter to answer questions relating to violations of the court's orders in a criminal trial sealing a grand jury transcript.) Although the statutory language authorizes use of the contempt power to enforce civil discovery, the apparent rarity of that drastic sanction, though not controlling, does give us pause.

Lesser sanctions, such as the striking of pleadings, imposition of monetary fines, even dismissal of causes of action or defenses, are more plentiful in the precedent, but even in imposing such penalties, courts have emphasized the need to tailor the punishments to the derelictions, reserving Draconian sanctions only for the most flagrant abuses. (See, e.g., discussions in *Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 793 [149 Cal.Rptr. 499]; *Wilson* v. *Jefferson* (1985) 163 Cal.App.3d 952, 958 [210 Cal.Rptr. 464].)

The penalty of imprisonment has been permitted for contemptuous refusal to make payments, such as support payments. ■ In such matters, however, to have a valid contempt adjudication, the court must observe the procedures and requirements of Code of Civil Procedure section 1211 et seq., and specifically, the commitment order must demonstrate on its face that the citee is guilty of contempt (*In re Buckley, supra,* 10 Cal.3d at p. 247); the order must recite the specific facts giving rise to the contempt (*Lund* v. *Superior Court, supra,* 61 Cal.2d at p. 713; *Rosenstock* v. *Municipal Court* (1976) 61 Cal.App.3d 1, 7 [132 Cal.Rptr. 59]; *Chula* v. *Superior Court* (1962) 57 Cal.2d 199, 203 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421]; Code Civ. Proc., § 1211). Lack of these recitals compels annulment of the order (e.g., *In re Smith* (1976) 65 Cal.App.3d 291 [135 Cal.Rptr. 5]; *In re Rosen* (1973) 31 Cal.App.3d 71 [106 Cal.Rptr. 757]).

Also, the commitment order must recite a finding of present ability to perform before the citee may be punished for disobeying a court order. (E.g., *In re Wells* (1946) 29 Cal.2d 200, 202 [173 P.2d 811]; *Lake County* v. *Superior Court* (1977) 67 Cal.App.3d 815, 817 [136 Cal.Rptr. 830].)

Further, these requirements for a valid contempt citation apply in discovery sanctions matters. (*Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 791.)

The brief committal order here meets none of the above-detailed jurisdictional requirements prerequisite to a valid finding of contempt. In fact, it falls short even of the requirements for imposing less egregious discovery sanctions, which at a minimum call for a statement of explicit reasons for the sanction. (*Deyo* v. *Kilbourne, supra,* 84 Cal.App.3d at p. 797.)

■ The trial court here had available many alternative solutions other than adding to the already overcrowded jail population. Imposition of fines

and penalties, striking of defenses, bifurcation of trial to first ascertain if there was a valid partnership in California—these are all possible solutions, some of which Tyler's counsel apparently suggested. Imposition of a jail sentence to enforce civil discovery against a party to the lawsuit strikes us as unnecessary and overbearing. Use of this most extreme sanction should be reserved for situations where the court's dignity is truly compromised and no other suitable penalty can be found.

We conclude the incarceration of Bernal is both unwarranted and jurisdictionally defective and we therefore vacate the underlying contempt citation.

Let a writ of habeas corpus issue annulling petitioner's conviction of contempt. The trial court remains free to enforce its legitimate discovery orders in accordance with the principles stated in this opinion.

Wiener, Acting P. J., and Work, J., concurred.