[Civ. No. 22518.   First Dist., Div. Three.   Sept. 27, 1965.]

JOHN E. THORNE, Plaintiff and Appellant, v. MUNICIPAL COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent; THE PEOPLE, Real Party in Interest and Respondent.

250

Nicholas C. Petris, William F. Stanton, Garry, Dreyfus & McTernan and Benjamin Dreyfus for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and John T. Murphy, Deputy Attorneys General, for Real Party in Interest and Respondent.

DRAPER, P. J.—Adjudged in contempt of the municipal court, John E. Thorne was ordered to pay a fine of $100 or serve 5 days in jail on each of two counts. After hearing, the

superior court denied his petition for writ of review. He appeals.

Appellant was the attorney for defendants in trial of a criminal case. The order as to count one states that ''while this court was in session and during the direct examination of . . . a witness for the People,'' appellant ''rose from the counsel table and walked out of the courtroom without requesting permission from the court and without authorization from the court. . . . [H]e remained outside said courtroom for several minutes before returning. . . . [P]roceedings in the trial were necessarily stayed during his absence and the due course of the trial was interrupted.''

If these recitals are supported, there was a contempt. A defendant is entitled to counsel in a criminal trial, and when he is represented, the court cannot proceed in counsel's absence (*Arthur* v. *Superior Court,* 62 Cal.2d 404, 411 [42 Cal.Rptr. 441, 398 P.2d 777]). It is the attorney's duty to be present at all times during the trial (*Lyons* v. *Superior Court,* 43 Cal.2d 755, 760-761 [278 P.2d 681]).

Appellant argues, however, that the facts do not support the recitals. Review extends to the entire record (*In re Lake,* 65 Cal.App. 420, 424 [224 P. 126]), and since the contempt proceeding is criminal, no presumptions or intendments are to be indulged in to support the order (*Raiden* v. *Superior Court,* 34 Cal.2d 83, 86 [206 P.2d 1081]).

The transcript shows that Mr. Thorne's objection to a question was overruled. A question on the same line was being answered when the following occurred:

''THE COURT: Wait just one minute, Mr. Wisman, until Mr. Thorne returns.

''The record will show that Mr. Thorne just left the courtroom. Wait just a moment.

''Mr. Thorne has returned. You may proceed.

''MR. THORNE: I am sorry. I didn't mean to interrupt. You can go right ahead.''

Appellant argues that the finding of his absence ''for several minutes'' is unsupported because the transcript affirmatively shows that the interruption was but ''momentary,'' ''nearly imperceptible,'' and ''inappreciable.'' We are neither able nor authorized to read so much into this record. Fortuitously, nothing crucial occurred while appellant's absence deprived his clients of representation, so as to require mistrial or reversal on appeal. But we are unable to fix, in minutes or seconds, a period of absence which would assure that no such

result would follow, nor are we disposed to make a stopwatch essential equipment of a trial judge.

We look to the record only to find whether there was any substantial evidence to support the recitals (*Chula* v. *Superior Court*, 57 Cal.2d 199, 204 [18 Cal.Rptr. 507, 368 P.2d 107]; *Gillen* v. *Municipal Court*, 37 Cal.App.2d 428, 431 [99 P.2d 555]). Appellant's unannounced departure from the courtroom supports the finding that his behaviour was "disorderly, contemptuous and insolent"; the record shows affirmatively that it did "interrupt the due course of a trial" as the court found; and it was therefore contempt (Code Civ. Proc., § 1209, subd. 1).

Appellant also suggests that this contempt was not direct, but "hybrid," and thus required a noticed hearing at which he could explain his absence (*Inniss* v. *Municipal Court*, 62 Cal.2d 487 [42 Cal.Rptr. 594, 399 P.2d 50]; *Arthur* v. *Superior Court, supra*, 62 Cal.2d 404; *Chula* v. *Superior Court, supra*, 57 Cal.2d 199, 206-208). But these cases turned on failure of the attorney to appear. Here, appellant appeared, but left while trial was in progress. His departure was a physical, observable act. It occurred "in the immediate view and presence of the court" (Code Civ. Proc., § 1211). The contempt was direct. Thus we do not reach the question whether appellant was in fact afforded the hearing required in a "hybrid" contempt.

Count 2, however, cannot be sustained. The order recites that appellant had previously referred to incidents "occurring in Birmingham, Alabama, relating to atrocities," and was warned to "desist from reference to these occurrences." Later, he was admonished "not to dwell on isolated acts of violence which might have occurred in the cities of Birmingham or New Orleans, nor to refer to the slaying of one Medgar Evers or any occurrence of that nature." In his argument to the jury, appellant quoted from a history the details of a gruesome lynching some 50 years ago in Valdosta, Georgia. The court held this statement to be a "willful disobedience of a lawful order."

An order adjudging direct contempt is void unless it shows on its face facts constituting such contempt (*Chula* v. *Superior Court, supra*, 57 Cal.2d 199, 203; *Raiden* v. *Superior Court, supra*, 34 Cal.2d 83, 86.) Wilful disobedience must be based upon disregard of a clear and direct order (*Brunton* v. *Superior Court*, 20 Cal.2d 202, 205 [124 P.2d 831]; *Weber* v. *Superior Court*, 26 Cal.2d 144, 148 [156 P.2d 923]).

Appellant's statement did not refer to any incident in

Birmingham or New Orleans, or to the death of Mr. Evers, the three subjects specifically prohibited. The order then must find support in the catch-all proscription of reference to "any occurrence of that nature." The rule of ejusdem generis imports some ambiguity into the phrase itself. Grammatically, it seems to refer to the slaying of Medgar Evers, but the Valdosta lynching was hardly "of the nature" of the shooting of Mr. Evers. Nor, for that matter, was it similar to the recent events in Birmingham and New Orleans. The proscription here recited did not run to a broad subject matter, with specifics given merely by way of example. In light of the limitations upon adjudication of direct contempt, we feel constrained to hold that appellant was not adequately warned away from the argument he made.

The transcript does show unqualified admonitions against referring to "isolated acts of violence," or "single acts of atrocity." These admonitions could well support the finding of contempt, but they are not recited in the order. The strict rule limits us to the face of the order (*Raiden* v. *Superior Court, supra,* 34 Cal.2d 83, 86; *O'Laughlin* v. *Superior Court,* 155 Cal.App.2d 415, 422 [318 P.2d 39]).

The order denying review is affirmed as to count 1. As to count 2, it is reversed, with directions to annul that portion of the contempt order.

Salsman, J., and Devine, J., concurred.

A petition for a rehearing was denied October 27, 1965, and appellant's petition for a hearing by the Supreme Court was denied November 24, 1965.