[Civ. No. 30077.   Second Dist., Div. Four.   Mar. 16, 1967.]

PHILIP L. MILLER, Plaintiff and Respondent, v. THE MUNICIPAL COURT FOR THE LOS ANGELES JUDICIAL DISTRICT OF LOS ANGELES COUNTY, Defendant and Appellant.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Harold W. Kennedy, County Counsel, and Robert C. Lynch, Assistant County Counsel, for Defendant and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, John A. Daly, Assistant City Attorneys, and Nowland C. Hong, Deputy City Attorney, for Plaintiff and Respondent.

BISHOP, J. pro tem.*—The petitioner Miller, assigned to assist a defendant charged with four misdemeanor counts, was late in appearing at a session of the municipal court. He was cited for a direct contempt; tried and adjudged guilty. He applied for a writ of habeas corpus, but before one was issued it turned out that the only punishment imposed was a fine, two hundred dollars. With the superior court's blessing his petition was changed into one for a writ of review; that writ was issued, a hearing held and the order of contempt was annulled. ▇▇ The respondent municipal court has appealed from the judgment annulling its order of contempt but we are convinced that that judgment correctly disposes of the proceeding and are affirming it.

The parties on appeal have centered their argument on questions that, in our opinion, are not involved. They debate whether or not some affidavits of prejudice, filed in the misdemeanor master calendar division of the municipal court (Div. 20), and in the trial division (Div. 22), had deprived the court of jurisdiction. Such affidavits as were filed were directed at the trial judge acting in the misdemeanor cases; they did not attack him as the judge handling the contempt matter.

We deem the crucial question on this appeal to be that framed by section 1074 of the Code of Civil Procedure, where, speaking of the writ of review, it is said: "The review upon this writ cannot be extended further than to determine whether the inferior tribunal . . . has regularly pursued the authority of such tribunal." Before we begin to examine the facts in our case, we deem it advantageous to have before us the standards erected by two fairly recent Supreme Court opinions. We, of course, are called to pass upon the judgment of the superior court as it rules upon the propriety of a contempt order, while the two Supreme Court cases to which we shall listen, were determining directly whether or not the contempt orders themselves were to stand or fall. Each of the

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Supreme Court cases was concerned with an order finding late attorneys guilty of contempt, and not, as we are, with a judgment annulling an order that ruled a late attorney in contempt. The additional procedural step in our case does not rob the principles applied by the Supreme Court of their pertinency.

The earlier of the two Supreme Court cases to which we look for guiding light is *Lyons* v. *Superior Court* (1955) 43 Cal.2d 755 [278 P.2d 681].) Petitioner Lyons was the only counsel for a defendant on trial on a felony charge. At noon on the second day of the trial the court recessed until 2 p.m. Counsel did not show up until 2:45. At once the trial court ordered him to show cause why he should not be held in contempt. His excuse for being tardy was that he had a bad cold, took a nap relying on an answering service to awaken him, but he did not awaken. This did not serve to excuse this, his second late appearance in the case then on trial, which was one more added to a history of late appearances, and he was held in contempt and given a five-day jail sentence.

The Supreme Court held this to have been a direct contempt, committed in the presence of the trial court, and not excused. But it had this to say that is of interest to us. ''As carefully pointed out by this court when it first gave consideration to the subject [citation] and as has never been doubted, the power to adjudicate a direct contempt 'is necessarily of an arbitrary nature, and should be used with great prudence and caution. A judge should bear in mind that he is engaged, not so much in vindicating his own character, as in promoting the respect due to the administration of the laws; and this consideration should induce him to receive as satisfactory any reasonable apology for an offender's conduct.' Likewise, even where the finding of contempt appears essential to the proper conduct of the court's business no class of offense occurs to us in which the court should more readily search out and give effect to mitigating circumstances than in cases of direct contempts.'' (*Lyons* v. *Superior Court* (1955) 43 Cal.2d 755, 762 [278 P.2d 681, 685].)

The other Supreme Court case that presents principles pertinent to our proceeding is *Arthur* v. *Superior Court* (1965) 62 Cal.2d 404 [42 Cal.Rptr. 441, 398 P.2d 777].) Here, too, an attorney had failed to appear at a directed time. The trial judge sent his bailiff to bring him in, but he declined to go, excusing his refusal to accompany the sheriff by the circumstance that he was then due in another court. In concluding

that the trial court had properly found the attorney guilty of a direct contempt the Supreme Court summed up its observations: ''When an attorney fails to appear in court with his client, particularly in a criminal matter, the wheels of justice must temporarily grind to a halt. The client cannot be penalized, nor can the court proceed in the absence of counsel. Having allocated time for this case, the court is seldom able to substitute other matters. Thus, the entire administration of justice falters. Without judicious use of contempt power, courts will have little authority over indifferent attorneys who disrupt the judicial process through failure to appear. Nevertheless, to require attorneys always to be present when scheduled, without allowing any flexibility, would be unrealistic.

'' . . . . . . . . . . . .

''In the case before us, we cannot find petitioner's conduct to have been excusable. While it may be true that he could not avoid the conflict, he did little to attempt to mitigate the effect of his absence from the proceedings. . . . His client was left unrepresented and the court lost precious time that vanished forever. Petitioner's conversation in the hall with the bailiff did not suffice to meet a reasonable requirement that he notify the court of his absence for, in fact, he thought he was advising the bailiff from 101. The facts establish that petitioner arrived at the courthouse the morning in question burdened with a caseload that any prudent practitioner would realize rendered it impossible for him to conclude the day without a delay in some of the matters he was handling. He had made no reasonable effort to prevent the inevitability of conflict and delay. When he departed from Judge Wapner's courtroom he did so in a callously indifferent manner without notifying the court or his client that he would be absent. Under these circumstances punishment for being contemptuous of the judicial process is not inappropriate.'' (*Arthur* v. *Superior Court* (1955) 62 Cal.2d 404, 411 [42 Cal.Rptr. 441, 398 P.2d 777].)

Applying the matters considered significant by the Supreme Court in these two opinions, we find no valid basis for holding the petitioner, a city deputy public defender, in contempt of court under the facts revealed in the records in our case. True, he was told to be back at 1:30 p.m. of March 4, and he was not back until 1:56. But let us see the whole picture.

Meet Arleen Ruth Meister who, upset at her conviction on a misdemeanor charge of which she was innocent—she still

insists—took offense at the conduct of the officers taking charge of her after she was sentenced and resisted. As a result, before she was out of jail on the first affair, they had filed against her a complaint with four misdemeanor counts. This second case was dispatched by Division 20 of the municipal court for trial to a division from which it was returned and assigned to another trial division, Division 22. We shall refer to the judge of this trial division as Judge Twenty-two.

Judge Twenty-two took up *People* v. *Meister* at 12:30 p.m. of March 3. The afternoon was spent in bickering, revealed in a typewritten transcript of almost 80 pages. Defendant Meister had been represented by the city public defender or more accurately by a succession of his deputies. She had entered a not guilty plea and waived a jury. Now, as insistently asserted by her, she wanted private counsel. A Mr. Hamel had consented to take her case, but his other commitments would require a postponement. Judge Twenty-two refused to permit this attorney to take over, and, at the close of the day, stated ''I infer and conclude'' that it was neither Hamel's idea nor that of the defendant, that he become her attorney, but the machination of the deputies public defender who wanted some other judge than Judge Twenty-two. A motion that the case be returned to Division 20 for the presentation of affidavits of prejudice, which had been denied fitted into this concept. The narrative as we tell it, does not begin to detail that which we can only characterize as bickering between counsel, strangers and Judge Twenty-two. At 5:30 an adjournment was taken until 9:30 on March 4. At 9:30 on March 4 the session opened with an observation by Judge Twenty-two: ''The defendant is present in propria persona. Mr. Philip Miller, Deputy Public Defender, is at her side, Mr. Nugent, Deputy Public Defender, is at her other side, and Mr. John Karns is representing the People.'' Then the bickering began again. Our petitioner Miller advised the court that defendant wished to change her plea of ''not guilty'' to count I, to ''guilty.'' The prosecutor announced that on such a plea the People move to dismiss the remaining three counts. The court denied the request. A stranger spoke up, stating that the defendant was innocent. He was ordered to stay in attendance as a witness. Later, a similar request to change the plea of ''not guilty'' to ''guilty'' as to count IV was denied. After some further outbursts by the defendant, Judge Twenty-two addressed the defendant: ''Behave yourself. You're appearing for yourself. If at any stage

you wish to change your mind about that and appear through the Public Defender, two representatives, two deputies of the Public Defender are here, Mr. Nugent and Mr. Miller. I have impliedly and I now expressly declare that each and both of them is to remain here at all times until by order of the court I excuse one or the other.'' A bit later: ''In view of the hour, gentlemen, let's get under way with this case at 1:30 this afternoon.'' Whereupon a recess was taken at 11:45 to enable the defendant and her counsel to meet with the stranger who had spoken up, to see if he need remain as a witness.

At 1:55 Judge Twenty-two announced that ''Miss Meister is here in propria persona . . . one of the consultants . . . Mr. Nugent . . . is present. I note the absence of Deputy Public Defender Philip Miller and I am informed, (Mr. Bailiff), that Mr. Miller is or may be or will be in Division 20. Go to Division 20 and arrest him and bring him before this Court. . . . The hour is now 1:56. Mr. Philip Miller, Deputy Public Defender has just entered the courtroom for the first time. I will proceed with the matter of Mr. King,'' and Mr. King's bail was forfeited. Then this exchange of courtesies took place between Judge Twenty-two and our petitioner: ''. . . You were directed by this Court to return to this courtroom at 1:30 this afternoon.'' ''Yes, I was, your Honor, and I wish to apologize to the Court for being late. I was instructed by my office to remain until an affidavit——'' ''Mr. Miller, just a minute, sir. You are cited by this Court for contempt. I will inquire into the matter further at a later time.'' By 2:45 the jury panel was called in. By way of an immaterial footnote: Miss Miller was convicted on all four counts; given a jail sentence of 270 days on the fourth count; an appeal was taken; and the judgment reversed by stipulation.

The facts as we have so sketchily given them, up to the footnote, we gathered from the reporter's transcript of the court sessions of March 3 and 4, exhibits in the certiorari proceedings. The facts about to be related come from the reporter's transcript of the testimony of April 20, the contempt hearing in Department 22. The city public defender, Mr. Avan, was a witness and testified concerning the events with which he was familiar that took place during the noon hour of March 4. He had received a report of the events of the morning—of the appointment of deputies Miller and Nugent in advisory capacities, and of the court's instructions

to them to return by 1:30. The public defender called in a secretary, dictated one or two affidavits of prejudice, directed Deputy Nugent to return to the courtroom, and ordered Deputy Miller to remain in the office until the secretary could get the affidavits written. when he was to take them to Division 20 to get them signed, then go to Division 22.

About 1:25 Mr. Avan called Division 22 on the telephone and asked Mrs. Gibson, the clerk of Division 22 to notify the judge that Deputy Miller would be a little late, and the reason for it. Mrs. Gibson, as a witness, verified this, and it will be remembered that Judge Twenty-two said that he had been informed that Miller would be in Division 20 where he was joined by Division 22's bailiff.

We now know the significant facts in addition to the one that triggered the contempt citation, that is, petitioner Miller's failure to appear at 1:30 on March 4. That failure, as measured by the circumstances that the Supreme Court marked as of importance in judging whether a similar fault was contempt, should not have been held to be contempt. Miller's "client" was not left unrepresented. The order of Judge Twenty-two that the defendant, who insisted upon representing herself, have counsel to advise, was not without precedent (see *People* v. *Black* (1962) 205 Cal.App.2d 406 [23 Cal.Rptr. 141]) but the petitioner's temporary absence, at a point in the proceedings when the selection of an unwanted jury had not yet begun, did not leave the defendant without an advisor; Deputy Nugent was at her side. Care was taken to notify the judge presiding in Division 22 that counsel would be late. This courtesy—and it was that—is not an element of contempt.

Petitioner Miller's delay in appearing was not due to an over indulgence in his own business; he was not reprehensible because he had taken on more business than he could handle. After all, he was a deputy, and his chief piled a job on him that was not of his choosing.

When he left the court at the beginning of the noon recess, it was not knowing but not telling that he would be late returning. Not one of the faults that prompted the Supreme Court to find the petitioner in contempt, in *Arthur* v. *Superior Court*, was evidenced in this case.

His delay in returning to the other side of the defendant, who did not desire his presence, was not for any idle or selfish purpose. The public defender had been advised that it was not too late to file an affidavit of prejudice in the

master calendar department. The affidavit was to be directed not at the judge in Division 11, where the case was first assigned, but at the judge in Division 22, which it had reached without any public action in Division 20. Right or wrong, it was a bona fide attempt on the part of the Public Defender, in the interest of the defendant whose body guards his deputies had become, to bypass a judge who had publicly declared he believed them guilty of trickery. What of the admonition of *Lyons* v. *Superior Court, supra,* that ''the power to adjudicate a direct contempt is necessarily of an arbitrary nature, and should be used with great prudence and caution''? We are convinced that Judge Twenty-two used his undoubted power to adjudicate a contempt, too eagerly.

The judgment annulling his order is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.