[Crim. No. 12965. In Bank. Feb. 18, 1969.]

In re MICHAEL C. CIRAOLO on Habeas Corpus.

John D. Nunes, Public Defender, Chris G. Gasparich and Judith Ann Ciraolo for Petitioner.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Robert R. Granucci, Deputy Attorneys General, for Respondent.

BURKE, J.—Petitioner Michael C. Ciraolo, an attorney and assistant public defender for Alameda County, seeks to have set aside an order of contempt issued by the Alameda County Superior Court, and arising out of the filing by petitioner of a certain false disqualification affidavit in a criminal matter assigned to Judge Robert H. Kroninger for trial. In our view the trial court's conclusion is amply warranted that petitioner did not in good faith believe the truth of his assertions made in the affidavit but instead used the affidavit and disqualification motion simply as one of a number of sequential efforts to obtain continuances; petitioner failed to offer any meritorious explanation or justification for his conduct or any indication that he felt contrite or would not again indulge in the same unworthy delaying tactics if the occasion is presented. Accordingly, the order to show cause heretofore issued will be discharged and the petition for habeas corpus denied.

The Alameda County public defender's office represented defendant in the case of People v. Banks, with petitioner assigned as defendant's trial counsel. On July 10, 1968, the

case was assigned for trial before Judge Kroninger in Department Nineteen of the Superior Court of Alameda County. On the same day petitioner filed his own affidavit in the case, purporting to support a challenge to Judge Kroninger for cause under Code of Civil Procedure section 170, subdivision 5. In the affidavit petitioner declared unequivocally that Judge Kroninger "stated on July 5, 1968 that the Public Defender of Alameda County and his Office are incompetent . . . and due to [such statement] the Court is prejudiced against the defendant's counsel and affiant believes that the defendant cannot have a fair and impartial trial before said judge."

Commencement of the trial of Banks was delayed at least one-half day while the challenge was heard before another judge (Judge Emerson), who found that Judge Kroninger had not made the statement attributed to him "or any statement to that effect" and was not disqualified to try the Banks case. The case was thereupon returned for trial before Judge Kroninger.

Following the trial the public defender, Mr. Nunes, appeared for Banks at a probation hearing before Judge Kroninger on Monday, August 5, 1968, which was then continued to Friday, August 9. At the close of the August 5 hearing the following took place:

"THE COURT: While you're here, Mr. Nunes, I would like to . . . call [to] your attention, if you are unaware of it, that an affidavit which appears in the file in this case was executed, prepared and executed by one of your deputies, Mr. Ciraolo [petitioner]. who tried this case, and I wonder if you would be interested in asking that this be withdrawn from the file at this time? MR. NUNES: Well, may I talk to him about it and have him communicate with you?

"THE COURT: Well, I would like to have him here Friday. You, of course. are free to be here if you wish, but I would like Mr. Ciraolo to be here Friday. . . . I wish you would speak to him about it and see what he thinks should be done in that connection. MR. NUNES: I shall, Your Honor."

Following the sentencing of Banks on Friday, August 9, with petitioner present in the courtroom, Judge Kroninger conducted a summary proceeding at the conclusion of which he found petitioner in contempt under the provisions of section 1209 of the Code of Civil Procedure for his conduct in the filing of the unsupported challenge and of the false affi-

davit in connection therewith.[1] Judge Kroninger sentenced petitioner to three days in jail plus a fine of two hundred dollars or an additional ten days in jail. Petitioner has been released on his own recognizance and the sentence stayed pending the outcome of this habeas corpus proceeding.

It is established that the filing of false affidavits may be treated as direct contempt and dealt with summarily by the judge against whom and in whose court the offense was committed. (*Lamberson* v. *Superior Court* (1907) 151 Cal. 458 [91 P. 100, 11 L.R.A. N.S. 619]; see also *Blodgett* v. *Superior Court* (1930) 210 Cal. 1, 9 [290 P. 293, 72 A.L.R. 482]; Mosk, *Direct Contempt* (1956) 31 State Bar J. 510, 517, 520.)[2] All that is required is that an order be made reciting the facts constituting the contempt, adjudging the person guilty, and prescribing the punishment. (Code Civ. Proc. § 1211; *Arthur* v. *Superior Court* (1965) 62 Cal.2d 404, 407 [2] [42 Cal.Rptr. 441, 398 P.2d 777].) Such an order was made here and petitioner's contention that he was denied due process is without merit. Additionally, he was accorded a hearing and the opportunity to present evidence and to attempt to explain his conduct.

The judgment and commitment order in this case recite that petitioner had filed the offending affidavit (quoting it) under penalty of perjury; that the factual allegations in the affidavit were wholly false, although petitioner had declared such facts to be true of his own knowledge; that they charged the judge with judicial misconduct, with slander and with intended neglect of duties; that upon being given opportunity to produce evidence and to explain the filing of the affidavit petitioner replied in substance only that his purpose had been to obtain a continuance of the trial; that in the premises petitioner did not in good faith believe the truth of his assertions but instead used the affidavit and the disqualification motion simply as one of a number of sequential efforts to obtain continuances; that as a result of petitioner's actions

---

[1]More specifically, the court informed petitioner that he was found in contempt "in having engaged in contemptuous conduct toward the Court, in misbehaving in office, in violating your duty as an attorney and officer of the Court and Deputy Public Defender of this County, and additionally, in having abused judicial process and in having used a motion for an improper purpose." (See subds. 3, 4, 8, of Code Civ. Proc., § 1209.)

[2]Nothing in *In re Cunha* (1932) 123 Cal.App. 625 [11 P.2d 902, 18 P.2d 979], cited by petitioner, is persuasive to the contrary; there the attorney adjudged in contempt did not himself prepare and file the contemptuous document.

the court, its attaches and 60 potential jurymen were idled pending the hearing on petitioner's challenge.

Contrary to petitioner's contention, such a recitation is obviously adequate to support the order adjudging petitioner in contempt for misbehavior in office, for violation of his duty as attorney, assistant public defender and as officer of the court, and for abuse of process. (See fn. 1, *ante.*)

Petitioner also attacks the sufficiency of the evidence to support the finding that he was guilty of contempt. Whether petitioner's acts constituted a contempt is jurisdictional, and in the absence of evidence showing contempt, the order of commitment should be annulled. However, the responsibility of the reviewing court is merely to ascertain whether there was sufficient evidence before the trial court to sustain the judgment and order. The power to weigh the evidence rests with the trial court. (*Arthur* v. *Superior Court, supra,* 62 Cal.2d 404, 409-410 [11-13], and cases there cited; *Bridges* v. *Superior Court* (1939) 14 Cal.2d 464, 485 [9] [94 P.2d 983]; *Vaughn* v. *Municipal Court* (1967) 252 Cal.App. 2d 348, 357-358 [2] [60 Cal.Rptr. 575].)

It cannot be questioned that the filing by an attorney of an affidavit containing statements known to be false, or with disregard as to their truth or falsity, is contemptuous, as is any other attempt to deceive a court. (See *Vaughn* v. *Municipal Court, supra,* 252 Cal.App.2d 348, 358 [3-6]; *Daily* v. *Superior Court* (1935) 4 Cal.App.2d 127, 132-133 [40 P.2d 936]; *In re Friday* (1934) 138 Cal.App. 660, 663 [3] [32 P.2d 1117]; *In re Peairs* (1927) 80 Cal.App. 672, 674 [252 P. 745]; *United States* v. *Temple* (4th Cir. 1965) 349 F.2d 116.) Included are false statements accusing a judge of misconduct. (*Lamberson* v. *Superior Court, supra,* 151 Cal. 458; *In re Friday, supra.*)

Petitioner's affidavit in this case charged Judge Kroninger with a slanderous statement against the Public Defender of Alameda County and his office, and also declared that the judge was accordingly prejudiced against counsel from that office and would not fairly conduct a trial of a defendant represented by such counsel. Judge Kroninger properly construed such charges as accusing him of misconduct. "The judge of a court is well within his rights in protecting his own reputation from groundless attacks upon his judicial integrity and it is his bounden duty to protect the integrity of his court." (*In re Friday, supra,* 138 Cal.App. 660, 663; see also *Daily* v. *Superior Court, supra,* 4 Cal.App. 2d 127, 133.) "However willing he may be to forego the pri-

vate injury, the obligation is upon him by his oath to maintain the respect due to the court over which he presides.'' (*Lamberson* v. *Superior Court, supra,* 151 Cal. 458, 461-462.)

 The record discloses not only that petitioner's affidavit falsely accused Judge Kroninger of making a slanderous charge of incompetency against the public defender and his office, but that petitioner failed to show that he had made a good faith effort to ascertain whether his accusation was true or false before filing his affidavit. Additionally, despite the fact that petitioner learned at least as early as the hearing held by Judge Emerson on petitioner's challenge to Judge Kroninger that the latter had not made the statement attributed to him by petitioner, petitioner thereafter not only failed to withdraw the offending accusation although given an opportunity to do so, but at the contempt hearing accorded him at the conclusion of the Banks matter persisted in defending his conduct in filing the false affidavit, declaring, however, that he had intended to make the affidavit on ''information and belief'' but that that language had inadvertently been omitted therefrom.

Petitioner concedes that no such statement as that he attributed to Judge Kroninger was made by the judge in petitioner's presence, and that the record fails to show that the judge ever made such a statement. However, petitioner asserts that the alleged statement was relayed to him by Mr. Newhouse, another assistant public defender for Alameda County. At the hearing before Judge Emerson on petitioner's challenge to Judge Kroninger, Mr. Newhouse testified that on July 5, 1968, when he was appearing before Judge Kroninger on behalf of defendant in the case of People v. Dodge, Judge Kroninger had raised the question of what procedure should properly be followed after discovery by the judge of what he termed the error and neglect of defendant's counsel in permitting the case to be assigned out of the master calendar department at a time when defendant was not personally present. Mr. Newhouse further testified that Judge Kroninger ''never stated'' the words attributed to the judge in petitioner's affidavit (''That the Public Defender of Alameda County and his office are incompetent''), but ''The sense of the proceedings [in the Dodge case] which I imparted to Mr. Ciraolo were those words. . . . [T]his was an opinion and conclusion drawn by [me] as to the comments stated by Judge Kroninger . . . it was my impression of the remarks made to—in court to me. . . . And this was passed on . . . to Mr.

Ciraolo by word of mouth. . . ." Mr. Newhouse was not asked and did not state what precisely he had said to petitioner about Judge Kroninger's comments.

A transcript of the proceedings before Judge Kroninger in the Dodge case likewise fails to disclose that the judge made the statement with which petitioner charged him, or any statement to that effect.[3]

At the contempt proceeding which followed the conclusion of the Banks matter, Judge Kroninger commented to petitioner that although as a direct contempt the proceeding could be conducted summarily without the taking of evidence, nevertheless "I would want to give you an opportunity to make any showing by way of production of evidence that you might wish to make." Petitioner protested that he had filed the affidavit in good faith, relying upon information from Mr. Newhouse, but that through inadvertence the words "upon information and belief" had been omitted from the affidavit; that there was no personal antagonism upon his part or any disrespect for the court and he had acted in what he thought was the best interest of his client. Petitioner did not withdraw his charges against Judge Kroninger, but declared that "I will personally apologize to the Court for any inference the Court may have drawn as a personal attack but I . . . would only ask that the affidavit be amended to read 'information and belief' and let it stand. As there has been a hearing on the matter and Judge Emerson has not ruled in our favor, I feel the issue should be settled. If this Court . . . wishes to take any separate or independent action, the Court is free to do so."

When Judge Kroninger again inquired whether petitioner wished to present any evidence, petitioner declared he was not prepared to do so, stating that he did not view the proceeding as a valid contempt proceeding. The judge again reminded petitioner that even Mr. Newhouse, upon whose information petitioner claimed reliance, had failed to support the allegation of the affidavit, so that even amending the affidavit would not cure its basic falsity. Note was also made of petitioner's failure to use an affidavit from Newhouse himself, who had actual knowledge of the facts, rather than petitioner's own

---

[3]It may also be noted that in a declaration submitted by Judge Kroninger in response to petitioner's disqualification challenge, the judge not only denied making the statement but declared that even if he did hold the view attributed to him by the public defender, such view would not work to the prejudice of a defendant represented by the public defender but would result in the judge's taking particular care to protect the defendant's rights in cases assigned to the judge.

affidavit. From all of the circumstances, said the court, "I think the only inference that can be drawn is that the [affidavit] was wilfully made by you with knowledge . . . that you did not know the facts, and very possibly with knowledge that the facts were not as you represented them. . . . I think it's fair to infer that the reason you did not use his affidavit was that you believed you were unable to in that Mr. Newhouse was not prepared to make such a declaration under oath since he knew that was not the fact."

With respect to petitioner's asserted motive of protecting the rights of his client, Judge Kroninger related the repeated continuances sought by petitioner in the Banks case[4] and then commented that "I think with all of that sequence of events, counsel, there is a very strong [and very fair] inference to be drawn . . . that the [disqualification] motion which you made was merely one step in a great number of steps calcu-

---

[4]When the Banks case was in the master calendar department on Monday, July 8, 1968, for assignment to a trial department, petitioner sought a one-week continuance, which was denied and the case assigned for trial before Judge Dieden. Petitioner and Banks then went to Judge Dieden's court, where petitioner again sought a continuance but was informed by the judge that the trial would commence on Thursday, July 11, and petitioner "informed him that we wouldn't be prepared at that time." Banks and petitioner thereupon challenged Judge Dieden under Code of Civil Procedure section 170.6, necessitating a return of the matter to the calendar court for reassignment; Judge Dieden commented to petitioner that "the case is going to Judge Kroninger." Upon return of the parties to the calendar court petitioner again asked for a continuance, and the case was put over to Wednesday morning, July 10. On July 10 the calendar court assigned the case to Judge Kroninger, petitioner filed his affidavit accusing Judge Kroninger of prejudice and challenging him for cause, and the case was continued to the following morning to set the hearing on the challenge. On Thursday morning, July 11, after that hearing had been assigned to Judge Emerson, he had heard and disallowed the challenge, and the parties had arrived before Judge Kroninger for the trial, petitioner once more sought a continuance pleading both illness of the defendant and that petitioner was awaiting the results of medical tests made of defendant the previous afternoon. Judge Kroninger continued the case until 2 o'clock that afternoon so that defendant could be examined medically during the noon recess. Medical testimony received when court convened in the afternoon was to the effect that nothing in defendant's physical condition would prevent his communicating with his attorney and participating in the trial; the trial thereupon commenced. During the course of the trial the next afternoon (Friday) petitioner again sought a continuance, stating that on the following day he expected to have the results of the earlier medical tests of defendant which he felt he needed in order to properly determine whether defendant had made an intelligent waiver of his constitutional rights. Judge Kroninger noted that petitioner's office had been in the case for the six months since defendant's arrest and that it was unclear what relevance the test results would have, but the judge agreed to and did release the jury until the following Monday and petitioner agreed that on Monday morning he would either be prepared to present evidence or submit the matter on the evidence already adduced.

lated to simply delay and obtain a postponement of the trial of the matter, and such motive, of course, is unworthy and I think it's especially reprehensible to be willing to darken or damage the reputation of another through . . . a false assertion of fact under oath, for such a trivial purpose. . . . I have always felt that a man's reputation is something which should be honored and respected and which one should be willing to attack and attempt to weaken only with very strong cause.''

As to petitioner's protest that the court should not take offense and consider petitioner's conduct contemptuous, the judge pointed out that ''what you have accused this Court of is, at best, misconduct and a slander which I assume would, if true, be actionable, at least civilly, if not as a criminal matter. The further assertion, then, that because the Court felt that counsel was incompetent, the Court would then be prejudiced against and would not give a fair trial to a client, is a conclusion which I find incomprehensible. I have little doubt that most judges on occasion . . . have some doubts of the competence of one counsel or the other in matters that appear before the Court, but I have never known any judge who has not attempted to balance the matter by seeing that the unfortunate client of that attorney had all of his rights protected, and so I cannot understand how you could reach the conclusion and make the assertion as a matter of fact that because, even assuming it were true that the Court felt counsel was incompetent, the Court would then deprive the client of a fair trial. So for all of these reasons, I think a fair assumption and the only reasonable assumption and conclusion to draw is that there was no good faith in what you did and that, on the contrary, you were willing to make such a serious charge and to place of public record a matter disparaging to a member of the bench for very trivial cause.''

Petitioner then attempted at length to justify his various requests for continuances of the Banks trial, again referred to omission of the ''information and belief'' line from his affidavit, protested that the court's inferences from petitioner's behavior were not proper ones, and declared that the court was without jurisdiction to conduct the contempt proceeding. Judge Kroninger commented that petitioner's explanations of his requests for continuances simply lent support to the court's inferences, as each time one of such efforts failed petitioner had tried another giving a different reason. The judge thereupon found petitioner in contempt.

The record obviously supports the inference that peti-

tioner filed his false affidavit as a device in his repeated efforts to secure further continuances in the Banks trial. Although his eagerness to protect what he conceived to be the best interests of his client may be conceded, ''That counsel may have proceeded out of an excess of zeal . . . does not justify making scandalous charges against the judge.'' (Mosk, *Direct Contempt, supra,* 31 State Bar J. 510, 517.) As in *In re Friday, supra,* 138 Cal.App. 660, 663, ''The act of petitioner was a flagrant contempt of the court of which he was an officer and is not excused by the mere assertion that his act was in good faith. Good faith to a client and good faith to a court can never be exemplified by reckless and scandalous charges, not even based upon logical suspicion.''

Additionally petitioner, although aware of the falsity of his charges against Judge Kroninger, in effect declined to withdraw them and expressly defended his tactics in making them. Also, at no time did he attempt to explain his assertion that if Judge Kroninger (or any other judge) considered a defendant's counsel to be incompetent the judge would not accord defendant a fair trial. In short, it appears that unless the seriousness of his conduct is impressed upon petitioner by this contempt conviction and sentence, petitioner will feel it appropriate to again employ the same contemptuous tactics. No trial court should be obliged to be subjected to them. Petitioner's protest that Judge Kroninger should not object borders upon the naive; no conscientious judge could ignore the charges made in petitioner's false affidavit.

 Finally, petitioner complains of his sentence. Section 1218 of the Code of Civil Procedure authorizes, as punishment for contempt, a fine not exceeding $500 or up to five days imprisonment, or both. Petitioner was sentenced to incarceration for three days and a fine of $200, in default of which he is to serve an additional ten days. The inherent contempt power of the courts, even as limited by Code of Civil Procedure section 1218 has long been held to include the power to incarcerate in lieu of payment of a fine imposed for contempt. (*Ex parte Crittenden* (1881) 62 Cal. 534; *Ex parte Abbott* (1892) 94 Cal. 333 [29 P. 622]; *Ex parte Karlson* (1911) 160 Cal. 378 [117 P. 447, Ann. Cas. 1912D 1334]; *In re Victor* (1934) 220 Cal. 729 [32 P.2d 608].)[5] Moreover, as noted in *Ex parte Abbott, supra,* and *Ex parte Karlson, supra,* section

[5] *People* v. *Velarde* (1920) 45 Cal.App. 520, 530 [188 P. 59], cited by petitioner, did not deal with a sentence for contempt of court and is not pertinent here.

11 of the Penal Code expressly makes the limitations of section 1205 of the Penal Code[6] inapplicable to punishment imposed for contempt.[7] Accordingly there is no restriction upon the contempt power which would invalidate petitioner's sentence or any part thereof.

The order to show cause is discharged and the petition for the writ denied.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

Petitioner's application for a rehearing was denied March 19, 1969.

---

[6]Penal Code section 1205 authorizes imprisonment in lieu of a fine but limits such imprisonment to the maximum term permitted for the particular offense. Penal Code section 11 declares that ''This code does not affect any power conferred by law . . . upon any public body, tribunal, or officer, to impose or inflict punishment for a contempt.''

[7]The superior court which modified a contempt sentence to accord with section 1205 of the Penal Code, as mentioned in *Inniss* v. *Municipal Court* (1965) 62 Cal.2d 487, 489, fn. 2 [42 Cal.Rptr. 594, 399 P.2d 50], apparently overlooked the provisions of section 11.