[No. B022437. Second Dist., Div. Seven. Feb. 6, 1987.]

In re JOHN F. BAROLDI on Habeas Corpus.

**COUNSEL**

John F. Baroldi, in pro. per., for Petitioner.

John A. Daly, Ladell Hulet Muhlestein and Chase, Rotchford, Drukker & Bogust for Respondent.

---

## OPINION

**LILLIE, P. J.**—By way of petition for writ of habeas corpus, petitioner, an attorney at law, challenges an order of the superior court dated July 30, 1986, adjudging him in contempt, sentencing him to five days in the county jail and imposing a fine of $500. This court issued order to show cause: written return was filed and oral argument was waived. We grant the petition and order writ to issue.

I

### PROCEDURAL HISTORY

Petitioner was retained to represent Timothy Bruce Henning in a criminal case in which Henning was charged with possession for sale of marijuana: he appeared for Henning at the time of arraignment and regularly thereafter until July 9, 1986. The cause was set for trial on July 9 in Department F, Southeast District of the Superior Court: on that day petitioner failed to appear, and the trial was set over to the next day (July 10). Petitioner appeared on the 10th and when asked by the court why he did not appear on July 9, he responded that he had other appearances and then developed car trouble. The court advised petitioner of its inability to reach him through his telephone exchange which could or would not provide information as to his whereabouts maintaining it was not responsible for him. Because the court was then engaged in another matter, it ordered petitioner to remain in the building, and in the afternoon excused him with an order to return at 9 a.m. the next day (July 11). Petitioner returned to court on July 11; no court was available and after Henning waived his right to a speedy trial, the court ordered, "In the Henning matter, then, the matter will be continued to the 28th day of July. Both Mr. Henning and his attorney are directed to be here at nine o'clock on that day."

On July 28, 1986, at 9 a.m. the case was called for trial and Henning was present; courts were available for trial but petitioner was not present. The case was called for trial again at 10:43 a.m.; petitioner was still absent, and the court had received no word from him, his exchange or his office. Henning then told the court he had been unable to reach petitioner who was unavailable by phone; petitioner neither kept his appointment with Henning two weeks before nor returned Henning's daily calls to his office and exchange.

The court waited until 1:40 p.m., again calling the case for trial. Petitioner not having appeared at any time that day (July 28) and not having contacted the court, and no one having appeared for him, the court issued a body attachment for petitioner and set bail thereon at $25,000. With the consent of Henning the court relieved petitioner, finding that he had willfully deserted Henning, and appointed other counsel to represent him. On July 30 the court directed a letter to the State Bar of California enclosing transcript of the proceedings of July 10, 11 and 28, to consider in any disciplinary proceedings the State Bar may choose to initiate.

At 10:30 a.m. on July 30 petitioner appeared in court and the body attachment was recalled. The court informed petitioner that the Henning matter was called for trial on July 28 and the court and five other courts were available, then asked, "Where were you?" Petitioner advised the court that another counsel "was supposed to have appeared" for him in the Henning case, which excuse the court found to be "absolutely unsatisfactory and [is] not acceptable." Then petitioner launched into a long explanation of being in Las Vegas, Nevada on a case "in which the People are seeking a life sentence on the client there" giving the impression he had been in court representing a defendant, an explanation not well received by the court when it developed through further inquiry that the case in Nevada was not in trial and would not be until September, petitioner was not in court there, he was not counsel of record in that case, his only business in Nevada was visiting a witness in a federal correctional facility at Indian Springs, Nevada, in connection with "pretrial activities" in the case of a former client, and he had not been "available at a number where he could be reached." Of this, the court said, "[Y]ou weren't attorney of record there, and you were here, so your responsibility was a much higher one here in the Superior Court of the State of California than it was in a Justice Court in Nevada." "So for you to be discussing some possible future business with an inmate is absolutely an inexcusable reason for not appearing here. It's a totally inadequate explanation. [¶] The court finds that it is an unsatisfactory explanation. The court finds you in contempt. [¶] You are sentenced to five days in the county jail and a $500 fine."

The court's written order of July 30, 1986, reads: "The Court finds that Mr. Baroldi had knowledge of the order. The Court does not accept the excuse for not being present to commence trial with 5 open courts on 7-28-86 and the Court finds John Baroldi in contempt of the court order of 7-11-86 and sentences him to 5 days in County Jail and ordered to pay a fine of $500.00."

## II

### CONTENTIONS

Petitioner's contention is two-fold—(1) there is no evidence in the record to establish that he had knowledge of the terms of the order of July 11, that he was guilty of contemptuous conduct, that he had the ability to comply with the court's order or that he willfully failed to comply; and (2) the order fails to state facts constituting contempt with sufficient particularity or state that the contempt occurred in the immediate presence of the court. We conclude that although there is substantial evidence to support the finding of contempt, petitioner was denied due process at the hearing, and that the written contempt order of July 30 is jurisdictionally defective because it failed to contain the information required by section 1211, Code of Civil Procedure.

## III

### DUE PROCESS

The court has both the statutory power (Code Civ. Proc., § 128, subds. (a)(1), (a)(3), (a)(5)) and the inherent power (*In re Buckley* (1973) 10 Cal.3d 237, 247-248 [110 Cal.Rptr. 212, 514 P.2d 1201, 68 A.L.R.3d 248]; *In re McKinney* (1968) 70 Cal.2d 8, 10-11 [73 Cal.Rptr. 580, 447 P.2d 972]) to adjudge and punish for contempt. Section 1209, subdivision (a)(5), Code of Civil Procedure, makes "Disobedience of any lawful judgment, order, or process of the court" a contempt of the authority of the court. As to disobedience by an attorney of an order directing him to be present at a court appearance at a scheduled time, the court in *In re Stanley* (1981) 114 Cal.App.3d 588 [170 Cal.Rptr. 755], said at page 591: "Elusive attorneys have long been a recurring problem in trial courts. (*Arthur* v. *Superior Court* (1965) 62 Cal.2d 404, 409 [42 Cal.Rptr. 441, 398 P.2d 777].) 'When an attorney fails to appear in court with his client, particularly in a criminal matter, the wheels of justice must temporarily grind to a halt. The client cannot be penalized, nor can the court proceed in the absence of counsel. Having allocated time for this case, the court is seldom able to substitute other matters. Thus, the entire administration of justice falters.' (*Id.,* at p. 411.)"

Although referred to in numerous authorities as a "hybrid" contempt, an attorney's failure to appear in court at a time he was personally ordered to appear, without valid excuse, is a species of and may be treated as a direct contempt and may be punished summarily. (*Chula* v. *Superior Court* (1962) 57 Cal.2d 199, 203, 207 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421]; *Lyons* v. *Superior Court* (1955) 43 Cal.2d 755, 759 [278 P.2d 681].) The

"hybrid" form in which elements of both direct and indirect contempt are present (first defined in the concurring opinion in *Chula* v. *Superior Court, supra,* 57 Cal.2d 199, 207) has been recognized where all of the relevant facts constituting the contempt occurred in the presence of the court—the failure of an attorney to appear in court as ordered, for a scheduled appearance— and the matters constituting an excuse took place outside the courtroom. (*Inniss* v. *Municipal Court* (1965) 62 Cal.2d 487, 490 [42 Cal.Rptr. 594, 399 P.2d 50]; *Arthur* v. *Superior Court* (1965) 62 Cal.2d 404, 408 [42 Cal.Rptr. 441, 398 P.2d 727]; *Mowrer* v. *Superior Court* (1969) 3 Cal.App.3d 223, 228 [83 Cal.Rptr. 125]; *Miller* v. *Municipal Court* (1967) 249 Cal.App.2d 531, 533-534 [57 Cal.Rptr. 578]; *Morales* v. *Superior Court* (1966) 239 Cal.App.2d 947, 950 [49 Cal.Rptr. 173]; *Thorne* v. *Municipal Court* (1965) 237 Cal.App.2d 249, 252 [46 Cal.Rptr. 749].)

█ Thus, in a case such as this, the statutory procedure for direct contempt is suitable. (*Chula* v. *Superior Court, supra,* 57 Cal.2d 199, 203, 207-208; *In re Karpf* (1970) 10 Cal.App.3d 355, 363 [88 Cal.Rptr. 895].) However, due process requires the court to confront the attorney with the charge (*Arthur* v. *Superior Court, supra,* 62 Cal.2d 404, 409) and afford him a reasonable opportunity to present a valid excuse—explain or excuse his absence—(*Inniss* v. *Municipal Court, supra,* 62 Cal.2d 487, 491; *Arthur* v. *Superior Court, supra,* 62 Cal.2d 404, 409; see also *Thorne* v. *Municipal Court, supra,* 237 Cal.App.2d 249, 252) and adequate time for him to procure such witnesses as he requires for his defense. *(Inniss* v. *Superior Court,* 62 Cal.2d 487, 491; *Morales* v. *Superior Court,* 239 Cal.App.2d 947, 952). Here petitioner was given ample opportunity to and he did explain his absence from court on July 28; however, the court failed to advise him of the specific charge or that it was contemplating a contempt order.

"Where counsel fails to appear, however, the offensive conduct, to wit, the absence, occurs in the presence of the court. Thus, when an absent attorney reappears in the courtroom, due process should be satisfied if the judge confronts him with the charge and offers him a reasonable opportunity to explain." (*Arthur* v. *Superior Court, supra,* 62 Cal.2d 404, 409, quoted in *Inniss* v. *Municipal Court, supra,* 62 Cal.2d 487, 490.) Therefore, before an attorney can be held in contempt for an absence from the courtroom, he must be advised of the specific charge, that he is being cited and that the court is considering a contempt order. (*Morales* v. *Superior Court, supra,* 239 Cal.App.2d 947.) Said the *Morales* court at pages 951-952, "We do not think it is too much of a burden on a court in one of these hybrid situations to inform the alleged contemner of exactly what is going on, when he is being offered his opportunity to show why he should be excused. . . . Here, while petitioner can certainly not be heard to say that he was unaware that he had incurred the court's displeasure, he should not be held to have divined that

the court was about to hold him in contempt. Had he been so informed he might well have requested permission to call witnesses to bolster his story concerning his whereabouts on the day in question."

As in *Morales,* at no point in the proceedings was there any mention of the word "contempt" by the court until the court pronounced petitioner in contempt (see 239 Cal.App.2d at p. 951). We are aware that petitioner, in his abject apology to the court and his request that the court "give [him] one shot at regaining the trust of this court," said he had never intentionally ever conducted himself "contemptuously," and that it is apparent he knew he might be involved in a contempt proceeding, nevertheless, the court at no time advised him he was being cited or the specific charge or that the court was conducting a contempt proceeding or that it was contemplating a contempt order.

## IV

### SUFFICIENCY OF EVIDENCE

█ Whether petitioner's acts constituted a contempt is jurisdictional, and in the absence of evidence showing contempt, the order of commitment should be annulled. (*In re Ciraolo* (1969) 70 Cal.2d 389, 394 [74 Cal.Rptr. 865, 450 P.2d 421].) Review extends to the entire record (*Chula v. Municipal Court, supra,* 57 Cal.2d 199, 205), but the power to weigh the evidence and determine credibility of witnesses rests with the trial court. (*In re Ciraolo, supra,* 70 Cal.2d 389, 394; *Arthur v. Superior Court, supra,* 62 Cal.2d 404, 409-410; *Vaughn v. Municipal Court* (1967) 252 Cal.App.2d 348, 357-358 [60 Cal.Rptr. 575].) The role of this court is merely to ascertain whether there was sufficient evidence before the trial court to sustain the order. (*In re Buckley, supra,* 10 Cal.3d 237, 247; *In re Ciraolo, supra,* 70 Cal.2d 389, 394.) In this case the trial court rejected petitioner's proffered excuse, based first on the "supposed" appearance of another lawyer for him (no one appeared for petitioner), and second on his attention to a personal matter (visiting a prison inmate in Nevada in a case to be heard two months in the future in which he was not attorney of record) rather than to the Henning case in which he had committed himself to the court and to his client. It determined that neither excuse was acceptable, especially the last, on the ground petitioner had a higher duty to appear in the criminal case here in which he was attorney of record and which was awaiting trial, than to take care of personal business in Nevada. Petitioner had a duty to present himself in court and proceed with a trial in which he had undertaken to represent Henning, and not to delay it unduly for any personal matter reasonably within his control. (*Lyons v. Superior Court, supra,* 43 Cal.2d 755, 758; *In re Stanley, supra,* 114 Cal.App.3d 588, 591-592.)

■ While in instances of direct contempt an apology to the judge should be given serious consideration (*People* v. *Turner* (1850) 1 Cal. 152, 153) and petitioner urges us to annul the contempt order on the basis of his apologies, which we note were proffered to the trial court with great feeling when it appeared his explanation might be rejected, the effect to be given such a mitigating factor lies exclusively in the sound discretion of the judge. (*In re Buckley, supra,* 10 Cal.3d 237, 257; *Lyons* v. *Superior Court, supra,* 43 Cal.2d 755, 763.) In many cases an apology should suffice, but in this case in which no one appeared to represent his client for trial in a criminal case and it was necessary to appoint other counsel to represent him, the court was open for trial, as were five other courts, the People were ready to proceed, the witnesses were present, petitioner had failed to appear in the same case once before (July 9), he made himself unavailable by telephone and petitioner elected to attend to personal business rather than appear with his client for trial, we cannot say the court abused its discretion in not accepting the apology and ending the matter there.

■ Clearly there is sufficient evidence in the record to establish that petitioner had knowledge of the terms of the order of July 11, he having been personally present in open court with Henning when the judge, directing himself to petitioner ordered, "In the Henning matter, then, the matter will be continued to the 28th day of July. Both Mr. Henning and his attorney are directed to be here at nine o'clock on that day," to which petitioner responded, "Thank you." As to petitioner's contemptuous conduct, disobedience of any lawful order of the court was made a contempt of the authority of the court by the Legislature (§ 1209, subd. (a)(5), Code Civ. Proc.). After hearing an explanation or excuse, the court is not bound to believe or accept it, and its determination is final on review. (*In re Ciraolo, supra,* 70 Cal.2d 389, 394; *Arthur* v. *Superior Court, supra,* 62 Cal.2d 404, 409; *Lyons* v. *Superior Court, supra,* 43 Cal.2d 755, 762; *Vaughn* v. *Municipal Court, supra,* 252 Cal.App.2d 348, 357.) It is difficult to tell from the record whether or not the court gave credence to petitioner's explanation (we note the court made reference to a possible holiday in Las Vegas), but in any case, it is clear that the court felt his business in Nevada was a personal matter reasonably within petitioner's control and no justifiable excuse for his absence. Without question the record shows that he had the ability to comply with the July 11 order having voluntarily gone to Nevada to take care of personal business; and that he willfully failed to comply, not having returned or in any manner communicated with the court and having abandoned his client who was completely without representation at that time.

Apropos is the court's comment in *Vaughn* v. *Municipal Court, supra,* 252 Cal.App.2d 348 at pages 360-361, "As an officer of the court, appellant not only deliberately violated a court order and thereby wilfully obstructed and

interfered with the orderly process of a criminal trial in respondent Court and deprived other waiting litigants of a prompt hearing, but as a member of the Bar acted in total disregard of his duties to his client leaving him stranded without representation, requiring a continuance of his trial . . . ."

## V

### CONTEMPT ORDER

■ Section 1211, Code of Civil Procedure sets up the procedure to be followed in adjudging persons in contempt of court. (*Arthur* v. *Superior Court, supra,* 62 Cal.2d 404, 407.) Section 1211 provides, "When a contempt is committed in the immediate view and presence of the court, or of the judge at chambers, it may be punished summarily; for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed." In *Morales* v. *Superior Court, supra,* 239 Cal.App.2d 947, counsel failed to appear in court at the scheduled time and the court, as here, treated his absence as a direct contempt. Said the court, "It is apparent that the court's order, even as corrected *nunc pro tunc,* does not comply with section 1211 in that it does not contain a recital that the contempt was committed in the immediate view and presence of the court. For that reason alone, the order must be annulled." (P. 950.) Compliance with section 1211 is jurisdictional. (*Vaughn* v. *Municipal Court, supra,* 252 Cal.App.2d 348, 357-358.) The order here does not recite that the conduct found to be contemptuous occurred in the immediate view and presence of the court on July 28, 1986. The order, therefore, fails to establish the jurisdiction of the court to issue the order (*In re Grossman* (1972) 24 Cal.App.3d 624, 631 [101 Cal.Rptr. 176]), and for that reason it is void.

■ Further, an order which assumes to punish summarily a direct contempt is void unless it shows on its face facts sufficient to constitute a contempt (§ 1211, Code Civ. Proc.). Such facts must be stated with sufficient particularity to demonstrate on its face, without the aid of speculation, that petitioner's conduct constituted a legal contempt. (*Chula* v. *Superior Court, supra,* 57 Cal.2d 199, 203; *In re Buckley, supra,* 10 Cal.3d 237, 247.) The order does not recite such facts. The order fails to identify the order of which "Baroldi had knowledge." While a "7-11-86" order is referred to as the order the court found "Baroldi in contempt of," nowhere in the order is it described nor does it recite what the 7-11-86 order required petitioner to do. While we might be able to assume from the recital (that the court did not accept petitioner's "excuse for not being present to commence trial with 5 open courts on 7-28-86 and the court finds John Baroldi in contempt of the court order of 7-11-86") that petitioner could have appeared on July 28 but did

not, it is a far cry from stating petitioner had the ability to comply with the 7-11-86 order and willfully failed to do so.

Having concluded that petitioner was denied due process in that he was not confronted with the charge against him and that the order of contempt is jurisdictionally defective, we have no alternative but to declare the order of contempt void.

■ The kind of conduct which the trial judge found to be contemptuous shows a complete disregard for our judicial processes, the dignity and authority of the court and its right, indeed its duty, to control the conduct of proceedings before it and its officers, and an abandonment of petitioner's client on the day of trial. No attorney should be able to walk away from this kind of conduct without being held accountable for his behavior because of error in the lower court proceedings or order. But this is exactly what Baroldi will be permitted to do if this court cannot remand for a new hearing, and it appears that it cannot. The Legislature has precluded such remand in a case of this kind by enacting section 1222, Code of Civil Procedure which provides, "The judgment and orders of the court or judge, made in cases of contempt, are final and conclusive." Baroldi was not convicted of violating any Penal Code section, but was adjudged in direct contempt of court by summary adjudication (§ 1221, Code Civ. Proc.). Because a contempt order is final and conclusive, there is no appeal, although it may be reviewed by certiorari or, where appropriate, by habeas corpus. (*In re Buckley, supra,* 10 Cal.3d 237, 258-259.) Because the order is final and conclusive, neither a trial court nor an appellate court can amend it for any reason, and an appellate court cannot remand a contempt cause in which the order has been declared void and annulled to the superior court to reinstitute contempt proceedings. (*In re Bloom* (1986) 185 Cal.App.3d 409, 412-413 [229 Cal.Rptr. 747].) *Bloom,* in which the contempt order was declared void and annulled by this court and the trial judge issued an order to show cause to reinstitute the contempt proceedings before him, holds that "reinstituting Bloom's contempt proceeding is contrary to the finality requirement of Code of Civil Procedure section 1222." (P. 413.) This obviously would hold true whether the trial court on its own initiated a new hearing by issuing an order to show cause or reinstituted contempt proceedings pursuant to directions to do so from this court.

While we do not agree with the legislative edict as applied in a case of this kind, we are nonetheless compelled by force of the statute to do no more than void the contempt order. We urge the Legislature to review the purpose of section 1222, Code of Civil Procedure, and the ramifications of the finality of such judgments and orders, and appropriately amend the statute to permit appellate remand to the trial court for a new hearing of a contempt case in

instances in which the appellate court has voided the contempt order and deems it proper.

## Disposition

The petition for writ of habeas corpus is granted; writ is ordered to issue.

Thompson, J., and Johnson, J., concurred.