Filed 6/16/21 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re PAUL M. MAHONEY on Contempt. | |
| SALSBURY ENGINEERING, INC., | G057832<br>(Consol. with G057966) |
| Plaintiff, Cross-defendant and Appellant, | (Super. Ct. No. 30-2015-00789263) |
| v. | ORDER MODIFYING OPINION;<br>NO CHANGE IN JUDGMENT |
| CONSOLIDATED CONTRACTING SERVICES, INC., | |
| Defendant, Cross-complainant and Respondent. | |

THE COURT:*

The opinion filed in this matter on June 10, 2021, is hereby modified as follows:

1. On page 6, the last full paragraph that finishes on page 7, delete the entire paragraph and replace with the following paragraph:

_____

* Before Bedsworth, Acting P.J., Aronson, J., and Goethals, J.

"Contempt of court is a violation of Code of Civil Procedure section 1209. It is punishable by a maximum of 5 days jail and/or a $1000 fine. (Code Civ. Proc., § 1218.) We find Attorney Mahoney in direct contempt for his implication that the court below was influenced by the political influence of the Irvine Company (1 count) and for his aspersion that the court was indistinguishable from or inclined to ignore the unethical conduct attributed to Attorney Thomas Girardi (1 count) and order him to pay a fine of $1,000 each, for a total of $2,000, payable in the clerk's office of this court within 60 days after this decision becomes final for all purposes. Pursuant to Business and Professions Code section 6086.7, the clerk of this court is directed to forward to the State Bar a copy of this judgment of contempt. Upon the finality of judgment, the clerk shall issue the remittiturs in case numbers G057832 and G057966."

This modification does not effect a change in the judgment.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re PAUL M. MAHONEY on Contempt. | |
| SALSBURY ENGINEERING, INC., | G057832 (Consol. with G057966) |
| Plaintiff, Cross-defendant and Appellant, | (Super. Ct. No. 30-2015-00789263) |
| v. | O P I N I O N |
| CONSOLIDATED CONTRACTING SERVICES, INC., | |
| Defendant, Cross-complainant and Respondent. | |

Appeal from a judgment and order of the Superior Court of Orange County, Craig L. Griffin, Judge.

Paul. M. Mahoney, in pro. per.

THE COURT:[*]

These contempt proceedings arise from a petition for rehearing filed by Attorney Paul Mahoney on behalf of his client Salsbury Engineering Inc., in which he impugned the integrity of both the trial court and this court. In that petition, he cited not a single statute or opinion and made no attempt to explain, distinguish, or otherwise reply to the cases and statutes relied upon by the trial court and this one. Instead he filed nine pages of text that more closely resembled a rant than a petition.

_____

[*] Before Bedsworth, Acting P.J., Aronson, J., and Goethals, J.

We issued an order to show cause to give Attorney Mahoney an opportunity to explain why he "should not be held in contempt for language 'impugning the integrity of the court in a document filed with the court.' (*In re Koven* (2005) 134 Cal.App.4th 262, 271; see also *In re Buckley* (1973) 10 Cal.3d 237, 248.)"

In that order, we made clear the language the court felt impugned its integrity. We specified that:

"On March 17, 2021, Attorney Paul M. Mahoney and Mahoney & Soll LLP filed a petition for rehearing in this matter on behalf of appellant Salsbury Engineering, Inc. (Salsbury). The petition did not analyze a single statute or decision. It made no effort to deal with the specific language of the contract at issue in this case, which supports the trial court's ruling. It made no effort to explain why notices of completion for the first two phases of construction were not recorded until the end of the JOST project, an indicator the parties involved viewed the project as integrated. It made no effort to explain why retainage was not returned to Salsbury on completion of phases 1 and 2, as would have been expected if they had been regarded by the parties as separate contracts. It made no effort to explain why, if these were separate contracts, the owner did not release to Consolidated Contracting Services, retention funds upon completion of each phase. It made no effort to explain where we had erred in distinguishing the *Hunt* and *Arntz* cases upon which Salsbury had relied. (*Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464; *Hunt v. Fahnestock* (1990) 220 Cal.App.3d 628.)

"In short, rather than attempt to convince the court its reasoning was faulty, you indulged in an unprofessional rant that impugned the integrity of the court, including casting the following aspersions regarding the court's opinion filed March 2, 2021:

"• 'Our society has been going down the tubes for a long time, but when you see it in so black and white as in the opinion in this case, it makes you wonder

2

whether or not we have a fair and/or equitable legal system or whether the system is mirrored by [*sic*] ignored by the actions of people like Tom Girardi.' (Pet. at p. 6.)

"• Insinuation that respondent Consolidated Contracting Services, Inc. (Consolidated) may have prevailed because it had contracts with a third party 'who . . . wields a lot of legal and political clout in Orange County.' (Pet. at p. 6.)

"• '. . . [B]ecause of a judicial slight [*sic*] of hand with no factual basis, this court has altered the landscape and created a windfall for Consolidated.' (Pet. at p. 8.)

"• Suggestion that this court did not 'follow the law.' (Pet. at p. 11.)

"• Assertion that the court 'ignores the facts' in its opinion. (Pet. at p. 8.)

"• Conclusion that this court 'indiscriminately screw[ed]' Salsbury. (Pet. at p. 11.)"

We expected contrition of the type displayed – but found inadequate – in *In re Koven, supra*. Instead, Attorney Mahoney "doubled down" on his original petition. He asserted that he had merely, "mentioned the obvious things that go on in Orange County which has a lot to do with The Irvine Company, plain and simple."

We are simply unable to read that statement as anything but a *second* insinuation that political clout accounted for the trial court's actions and our affirmance of them. When read in conjunction with his similar allegation in the petition for rehearing, this would serve as a perfect exemplar in any law school class in which the instructor was attempting to illustrate the phrase "impugn[] the integrity of the court."

Nor can we find any other way to interpret his comparison of the courts in this case to Los Angeles Attorney Thomas Girardi – whose alleged transgressions have received a great deal of media attention of late – than as an insult to the integrity of the court. He said, "Our society has been going down the tubes for a long time, but when you see it in so black and white as in the opinion in this case, it makes you wonder

3

whether or not we have a fair and/or equitable legal system or whether the system is mirrored by [*sic*] ignored by the actions of people like Tom Girardi."

The only uncertainty about how contemptuous that statement is relates to the muddled language marked by our [*sic*].  We tried to figure out whether he was saying that we were indistinguishable from Girardi and his ilk or that we ignored conduct such as his, but finally abandoned the effort because either one was contemptuous.

Nor did Attorney[1] Mahoney recant at the hearing.  We tried to nudge him toward a more temperate position but were unsuccessful.  Every time he seemed ready to moderate his stance, he would change direction and return to it.

The result is that we cannot even say, as did the *Koven* court, "We accept Koven's apology.  Nevertheless, we do not purge Koven of the contempts . . . ."  (*In re Koven, supra*, 134 Cal.App.4th at p. 265.)  Unlike the *Koven* court, which dealt with an attorney who had conceded her statements were "both improper and inexcusable on their face," and who "apologizes for the improper statements in the petitions, [and] expresses deep regret for impugning the [integrity of this] Court, and accepts the embarrassment she has brought upon herself," (*id*. at p. 264) we are confronted with a member of the bar who, after 52 years of practice, believes this is legitimate argument.

We do not.  We have elsewhere lamented the fact modern law practice is "rife with cynicism, awash in incivility."  (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 293.)  This kind of over-the-top, anything-goes, devil-take-the-hindmost rhetoric has to stop.

If you think the court is wrong, don't hesitate to say so.  Explain the error. Analyze the cases the court relied upon and delineate its mistake.  Do so forcefully.  Do

---

[1]     We mention Attorney Mahoney's occupation in every reference to him to emphasize the dimension of his offensive conduct.  We would have been shocked by this had he been in propria persona; for an attorney at law to repeatedly denigrate the system in this manner is beyond the collective century-and-a-half of this panel's experience.

so *con brio*; do so with zeal, with passion.  We in the appellate courts will respect your efforts and understand your ardor.  Sometimes we will agree with you.  That's why you file a petition for rehearing – because they are sometimes granted.

But don't expect to get anywhere – except the reported decisions – with jeremiads about "society going down the tubes" and courts whose decisions are based not on a reading of the law but on their general corruption and openness to political influence.  "'The judge of a court is well within his rights in protecting his own reputation from groundless attacks upon his judicial integrity and it is his bounden duty to protect the integrity of his court.'  [Citations.]  'However willing he may be to forego the private injury, the obligation is upon him by his oath to maintain the respect due to the court over which he presides.'  [Citation.]"  (*In re Ciraolo* (1969) 70 Cal.2d 389, 394-395.)[2]

This isn't some New Age civility initiative.  Recognition of the need to protect the institutional respect accorded the courts is a concept that goes back to the Middle Ages.  Society's need for confidence in its courts – and the concomitant requirement not to undermine that confidence – was an accepted truism at a time when Latin was still the lingua franca of our profession.  Edward Coke, who made the arguments *in 1581* that resulted in the Rule in Shelley's case we all studied so assiduously, knew the necessary distinction between questioning a decision and questioning the institution as, "De fide et officio judicis non recipitur question sed de scientia, sive sit error juris, sive facti."  (Bacon's Maxim, number 17.)  As interpreted most commonly, "The *bona fides* and honesty of purpose of a judge cannot be questioned, but his decision may be impugned for error either of law or fact.  The law

---

2    Our District Courts of Appeal are not especially thin-skinned.  *Koven*, decided 16 years ago, was the only published decision we could find of this type, and inquiries to other Courts of Appeal turned up no *unpublished* cases.  Thankfully, this does not come up much.

5

doth so much respect the certainty of judgments, and the credit and authority of judges, that it will not permit any error to be assigned which impeacheth them in their *trust* and *office*, and in willful abuse of the same; but only in ignorance and mistaking either of the law, or of the case and matter of fact." (Black's Law Dict., 5th ed. 1979), p. 380, col. 1.)

This was already considered *axiomatic* by Sir Francis Bacon (1561-1626) who included it in his collection of legal maxims five centuries ago. It was a given, a matter about which there simply could not be any argument. And, as a general rule, it still is. Practicing law without understanding this is like practicing medicine without understanding the circulatory system.

We publish this decision as a cautionary tale. The timbre of our time has become unfortunately aggressive and disrespectful. Language addressed to opposing counsel and courts has lurched off the path of discourse and into the ditch of abuse. This isn't who we are.

We are professionals. Like the clergy, like doctors, like scientists, we are members of a profession, and we have to conduct ourselves accordingly. Most of the profession understands this. The vast majority of lawyers know that professional speech must always be temperate and respectful and can never undermine confidence in the institution. Cases like this should instruct the few who don't.

Respect for individual judges and specific decisions is a matter of personal opinion. Respect for the institution is not; it is a sine qua non.

Contempt of court is a criminal violation under Penal Code section 166. It is punishable by a fine of up to $1,000 per count and/or six months in jail. (*Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1240.) We find Attorney Mahoney in direct contempt under subdivision (a)(1) for his implication that the court below was influenced by the political influence of the Irvine Company (1 count) and for his aspersion that the court was indistinguishable from or inclined to ignore the unethical conduct attributed to Attorney Thomas Girardi (1 count) and order him to pay a fine of $1,000, each for a total

6

of $2,000, payable in the clerk's office of this court within 60 days after this decision becomes final for all purposes. Pursuant to Business and Professions Code section 6086.7, the clerk of this court is directed to forward to the State Bar a copy of this judgment of contempt. Upon the finality of judgment, the clerk shall issue the remittiturs in case numbers G057832 and G057966.